**Barry C. SAMUELS, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–402.**

United States Court of Veterans Appeals.

Argued Feb. 18, 1998.

Decided Sept. 23, 1998.

Michael M. Cramer, Rockville, MD, for appellant.

Todd A. Sinkins, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assis-

tant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Vito A. Clementi, Washington, DC, were on brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

NEBEKER, Chief Judge:

The appellant, Barry C. Samuels, appeals from a March 1, 1996, Board of Veterans' Appeals (BVA or Board) decision denying service connection for post-traumatic stress disorder (PTSD). The issue is whether the appellant has submitted a well-grounded claim for PTSD. For the following reasons, the Court holds that he has not submitted such a claim and will affirm the BVA's denial of service connection for PTSD.

## I. FACTS

The appellant entered into active service with the U.S. Army on October 30, 1970. Supplemental Record (Supp. R.) at 1. At that time, the entrance examination report recorded a normal psychiatric condition. Record (R.) at 17. Seventeen days after entering service, a medical consultation sheet entry noted that the appellant had complained of being scared around weapons because, prior to entering service, he had accidentally shot his girlfriend. R. at 27. In a November 1970 letter, Dr. Maurice B. Weiner stated that the appellant had been terrified of guns since the accidental shooting of his girlfriend. R. at 28. An Army physician then permanently restricted the appellant from "the personal use of weapons in training or duty," and an Army medical board confirmed that restriction. R. at 29–30. After only three months and twenty-three days of service, the Army discharged the appellant because he did not meet the "medical fitness standards at time of [induction]." Supp. R. at 1.

More than four years later, the appellant filed a claim for service connection of an unspecified "nervous disorder." R. at 36–52. The appellant stated that he had enlisted in "good mental and physical condition," but that once he actually began basic training he started to have problems. R. at 40. Essen-

tially, the appellant asserted that Army drill instructors forced him to undergo weapons training despite his declared fear of using a weapon. See R. at 41–42, 94–99. In January 1976, the appellant further elaborated on his current psychological condition, requesting service connection for "schizophrenia-nerves." R. at 62. Michael Kelly, who went through basic training with the appellant, confirmed the appellant's assertion that he had been harshly treated by his drill instructors during basic training because of his fear of using a weapon. R. at 110–11, 126–27. In October 1977, the Board denied service connection for a "nervous disorder," finding that there was no evidence of a confirmed psychiatric disorder until 1976, more than four years after he left service. R. at 194–98.

Over the years, the appellant has received many diagnoses of various psychiatric disorders, not including PTSD. See R. at 204, 225, 230, 234, 303, 305, 322, 364, 382. None of these examiners linked the appellant's psychological condition to his service. In March 1991, the appellant filed a claim for PTSD and submitted a December 1989 psychological report that recorded a PTSD diagnosis. R. at 480, 476–78. The history the appellant provided in that report included a reference to his having had "PTSD from Vietnam," and a statement that a recent PTSD episode had been triggered when he saw an "old friend from the war whom he had thought had died." R. at 476. In a December 1991 VA psychiatric examination, the appellant "remembered" more Vietnam combat experiences, alleging that he had seen many people killed. R. at 492–94. The examiner diagnosed "atypical psychosis" and listed the "stress of military service" as an environmental factor. R. at 494.

A July 1994 BVA decision remanded the appellant's PTSD claim because, "regardless of the diagnostic labels used then or now to describe his illness, the question of whether psychological consequences of the preservice event were worsened by service has already been adjudicated." R. at 540. Consequently, the Board ordered the RO to determine the exact nature of the appellant's mental condition and the alleged PTSD stressors along with whether the appellant had submit-

ted new and material evidence to reopen his non-PTSD psychiatric disorder claim. R. at 541–42. After the BVA remand, the RO received multiple medical reports showing that the appellant had PTSD as a result of his alleged Vietnam experiences. *See* R. at 585–86, 587, 588, 724–25.

In the February 1995 examination ordered by the BVA, Dr. A. Husain questioned the appellant as to whether he had seen any combat and whether he had ever been in Vietnam. The appellant admitted that he had not been in combat, but he did assert that he had been in Vietnam where he saw a "lot of killing." R. at 983. Dr. Husain diagnosed the appellant with paranoid schizophrenia and dependent personality traits, listing the "stress of [m]ilitary experience" as an environmental factor. Significantly, Dr. Husain did not diagnose the appellant with PTSD, although he did remark that "there is much evidence to diagnose PTSD in my opinion." R. at 985.

In July 1995, the RO continued the denial of service connection for PTSD because there was no diagnosis of PTSD at the February 1995 and November 1991 examinations. While acknowledging the previous PTSD determinations, the RO found there was no evidence showing that "PTSD was incurred in or aggravated by military service." R. at 991. Notably, the RO did not comply with the 1994 BVA remand order requiring a new and material evidence determination as to the appellant's previously claimed nervous disorder.

The March 1996 BVA decision here on appeal similarly neglected to discuss whether the appellant had submitted new and material evidence concerning his nervous condition claim, listing the issue as "service connection for [PTSD]." R. at 7. In its decision, the BVA determined that the appellant had submitted a well-grounded claim, but that the preponderance of the evidence was against the appellant's PTSD claim. R. at 8. Although doubting whether the appellant had a clear diagnosis of PTSD, the Board did not resolve this question because, using The Diagnostic and Statistical Manual of Mental Disorders, third edition, (DSM–III), it found that there was no evidence of a stressor that would support a PTSD diagnosis. R. at 13–14. Further, the Board noted that none of the VA physicians "who used the term PTSD" had linked the appellant's claimed psychiatric symptoms to an actual in-service stressor. R. at 14.

## II. ANALYSIS

### A. Well–Grounded PTSD Claim

 A Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A well-grounded PTSD claim is one where the appellant has "submitted medical evidence of a current disability; lay evidence (presumed to be credible for these purposes) of an in-service stressor, which in a PTSD case is the equivalent of in-service incurrence or aggravation; and medical evidence of a nexus between service and the current PTSD disability." *Cohen v. Brown*, 10 Vet.App. 128, 137 (1997) (citations omitted). The appellant's evidentiary assertions must be accepted as true for the purpose of determining whether the claim is well grounded. "Exceptions to this rule occur when the evidentiary assertion is inherently incredible or when the fact asserted is beyond the competence of the person making the assertion." *King v. Brown*, 5 Vet.App. 19, 21 (1993) (citing *Espiritu v. Derwinski*, 2 Vet.App. 492 (1992) and *Tirpak v. Derwinski*, 2 Vet.App. 609 (1992)).

 Here, all of the appellant's PTSD diagnoses are based upon his fictitious recitation of combat experience in Vietnam. None of these PTSD diagnoses refers to any non-

fictional in-service incident, such as a fear of weapons, as a potential in-service stressor. Thus, for the purpose of determining whether the appellant has submitted a well-grounded PTSD claim, the alleged stressor is the appellant's combat experience in Vietnam. However, the record is absolutely clear that the appellant had no service in Vietnam, much less saw combat in that country. Although lay evidence of a PTSD stressor is generally presumed to be truthful, the appellant's testimony as to his Vietnam combat experience is inherently incredible, and neither the Board nor the Court is required to accept his assertions as true. *Cf. King*, 5 Vet.App. at 21. Because the appellant has not submitted credible evidence of an in-service stressor, and thus no evidence of service incurrence, his PTSD claim is not well grounded. *See Cohen*, 10 Vet.App. at 137; *see also Rucker v. Brown*, 10 Vet.App. 67, 72 (1997) (where no evidence of in-service exposure to ionizing radiation, claim not well grounded); *Epps v. Brown*, 9 Vet.App. 341, 343–44 (1996), *aff'd*, 126 F.3d 1464, 1468 (Fed.Cir.1997) (well-grounded claim requires evidence of incurrence of disease or injury in service).

### B. Procedural Issues

Because this Court finds the appellant's PTSD claim not well grounded, the Board erred in proceeding to the merits of his claim in both the decision here on appeal and in its July 1994 remand. Nevertheless, this error was not prejudicial to the appellant, and the Court will affirm the Board's denial of the appellant's PTSD claim. *Epps*, 9 Vet.App. at 344 (citing *Edenfield v. Brown*, 8 Vet.App. 384, 390–91 (1995) (en banc)). Additionally, this Court cannot tell, from the record on appeal, whether there has been an adjudication in response to the part of the Board's July 1994 remand order concerning the appellant's request to reopen his nervous disorder claim. Recently, another decision of this Court held that a remand by the BVA confers on a veteran or other claimant the right to VA compliance with the remand order and imposes on the Secretary a concomitant duty to ensure compliance with the terms of such an order. *Stegall v. West*, 11 Vet.App. 268, 271 (1998). The Court emphasizes that this decision regarding the appellant's PTSD claim has no prejudicial effect on the appellant's request to reopen his nervous disorder claim. *See Ephraim v. Brown*, 82 F.3d 399, 401 (Fed.Cir.1996) (newly diagnosed PTSD, whether or not related to a previously diagnosed mental disorder, cannot be the same claim).

### III. CONCLUSION

The November 27, 1996, Board denial of benefits is AFFIRMED, but for the foregoing reasons, not those given by the Board.