Dorrance H. PATTON, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–828.

United States Court of Appeals for Veterans Claims.

March 30, 1999.

Frederick S. "Rick" Spencer was on the brief for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Gregory W. Fortsch were on the pleadings for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a dissenting opinion.

STEINBERG, Judge:

The appellant, veteran Dorrance H. Patton, appeals through counsel a March 20, 1997, decision of the Board of Veterans' Appeals (Board or BVA) denying Department of Veterans Affairs (VA) service connection for post-traumatic stress disorder (PTSD). Record (R.) at 9. The appellant has filed a brief (the Court notes puzzling references in the brief to arthritis and knee and leg prob-lems (Brief (Br.) at 23–24), whereas the only issue addressed by the Board was PTSD). The Secretary has filed a motion for single-judge affirmance and to strike appellant's statement referring to an exhibit not part of the record on appeal (ROA). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will deny the Secretary's motion for single-judge affirmance, grant the Secretary's motion to strike, and vacate the Board decision and remand a matter.

## I. Facts and Procedural History

The appellant served in the U.S. Army from March to August 1956 and from October 1959 until February 1960. R. at 59–60. His service medical records (SMRs) indicated normal psychiatric clinical evaluations at the time of his first entry into service, first discharge, and second entrance physical. R. at 14–15, 17–18, 37–38.

On the evening of December 9, 1959, the veteran was admitted to the emergency room of an Army hospital, where he was treated for an acute anxiety reaction. R. at 27–28, 33. A detailed description of his treatment contained notations that he was afraid someone would "jump him" and that "inferentially, his profound feelings of shame, as well as other indirect derivatives suggest to me that there may be underlying homosexual panic. . . ." R. at 26–27. The SMRs also indicated that he complained of headaches, anorexia, and sleeplessness, and that he attributed "most of his problems" to an incident when he had been hit in the head with a glass bottle while on leave a few weeks before. R. at 26–28. According to those records, other soldiers in the barracks had reported that the veteran had "some sort of attack" the night he was first admitted to the Army hospital. *Ibid.* Although SMRs dated December 10, 1959, report that his anxiety appeared to have worsened since he had arrived at Fort Bragg (R. at 26), the ROA contains no notations of anxiety prior to December 9, 1959. The veteran's service personnel records contain no indication of any in-service assault incident. R. at 175–92, 194–206. On January 21, 1960, "despite a limited work assignment," the veteran "pre-

sented himself ... in a tearful disheveled state" at the Army hospital. R. at 51. He was diagnosed as having "[e]motional instability reaction, chronic, moderate; manifested by diffuse anxiety, poor performance under stress", and "administrative separation from the service [was] recommended". R. at 51. The veteran was subsequently given an honorable discharge from the Army. R. at 59.

During 1978 and 1979, the veteran was hospitalized several times in a VA medical facility, was treated for anxiety and depressive neurosis, and received medication from VA and psychotherapy from a private clinic. R. at 62, 64, 68, 101–02, 105; see also R. at 65–67, 69–71, 98–100, 103. In August 1978, he reported a history of alcoholism (R. at 68), and in March 1979, he "admit[ted] to heavy use of alcohol as a means of coping with his anxiety" and was diagnosed by a VA psychiatrist as having a paranoid personality (R. at 101). In May 1979, a VA physician diagnosed the veteran as having a "habitual excessive drinking" disorder and stated: "On previous admission patient had been called paranoid type personality though at this time I feel that this is probably this patient's basic underlying personality type which was brought out by his decompensation due to many years of alcohol abuse." R. at 102. The veteran submitted letters from two acquaintances, each providing general information about his nervous condition and requesting any assistance that VA could provide for the veteran (R. at 73, 76) and one mentioning his drinking problem (R at 73). The veteran also submitted an August 1979 letter from his wife detailing his changed behavior since service, including his "not getting along with people", his "hid[ing] behind his drinking", his anger and depression, and his "being ashamed of the way he was"; and she specifically reported that around the end of 1961 the veteran's mother had written to her that "she was afraid he might kill himself" and that "something had happened to him in the service". R. at 79–80. The veteran also submitted a July 1979 letter from a private physician stating that the veteran was "extremely agitated, depressed, loses control of [his] temper, and [was] potentially dangerous to both himself and others", and had been so

for the prior 12 months. R. at 82. The physician also stated that the veteran had not responded to medication and other treatment and that he might "lose control and kill someone". Ibid.

In September 1979, after a VA regional office (RO) decision denying service connection for a nervous condition and a Statement of the Case were apparently issued (see R. at 84), the veteran filed a VA Form 1–9, Substantive Appeal to the BVA (R. at 95). At an October 1979 hearing at the RO regarding the nervous-condition claim, the veteran testified under oath that he had been hospitalized after an altercation with a noncommissioned officer; that he did not "know what in the hell happened[;] ... [i]t just all went black"; that he had then received a medical discharge of which he was ashamed; that since he left the service he had "done a lot of heavy drinking ... to cover this up"; that his anxiety had gotten worse since he stopped drinking a few years ago; and that until recently he had not sought psychiatric assistance because he did not want anyone to know about his problem. R. at 85–86, 86, 87–88, 88, 91. He subsequently submitted both VA and private medical records from 1978 through 1981 (R. at 107–09, 112–52), including a January 1981 private psychiatric evaluation that noted that the veteran had "a paranoid personality with decompensation into a psychotic state manifested by homicidal ideation, agitation and depression" (R. at 108). No BVA decision apparently was issued in connection with the 1979 RO denial. The ROA does not reflect further contact by the veteran with VA until 1993.

During a November 1993 VA medical examination, the veteran stated, apparently for the first time to any medical professional, that while he was at Fort Bragg he had been raped by three men and that he did not report it because of "fear and shame". R. at 158. He disclosed that after a second hospitalization (apparently in January 1960, see R. at 51) he had told a sergeant about the rape and that the sergeant had instructed him not to tell anyone. At that time, he was diagnosed, for the first time, as having "PTSD, non-combat, chronic". Ibid. In December 1993, the veteran sought to have his nervous-

condition claim "re-opened to include PTSD". R. at 157. In January 1994, a VA medical examiner diagnosed PTSD, clearly relating the PTSD to the alleged in-service rape trauma. R. at 167–69. In December 1994, the RO denied service connection for PTSD, finding that the veteran had not provided the required corroborating evidence for an in-service noncombat stressor. R. at 209. The veteran timely appealed to the Board. R. at 212, 225. In April 1995, he testified under oath before the RO that he had been sexually assaulted but had been told (presumably by a sergeant, see R. at 158) that he would receive a dishonorable discharge and would be sent to prison if he reported it. R. at 236–37. In the 1997 BVA decision here on appeal, the Board denied the PTSD claim because it was "based on noncombat-related unverified stressors", and because corroboration of an in-service stressor was an essential element of his PTSD claim. R. at 9.

## II. Analysis

### A. Motion to Strike

■ The appellant contends that, in the absence of evidence of a combat-related stressor, he must "furnish the specific details of the in-service incident" and he states that he has "attempted to submit an affidavit which confirms by a third party the event immediately after this veteran left the service", citing to an "Exhibit 'A' attached hereto and made a part hereof by reference". Br. at 19–20. The Secretary has responded with a motion to strike references to that exhibit. Motion at 1–2. The Court notes that there is no such exhibit attached to the appellant's brief. In addition, this Court is precluded by statute from including in the ROA any material that was not contained in the "record of proceedings before the Secretary and the Board". 38 U.S.C. § 7252(b); see also Wilhoite v. West, 11 Vet.App. 251, 252 (1998); Bell v. Derwinski, 2 Vet.App. 611, 612–13 (1992) (per curiam order); Rogozinski v. Derwinski, 1 Vet.App. 19 (1990) (review in Court shall be on record of proceedings before Secretary and Board). Accordingly, we will not consider the appellant's purported attempt to submit an affidavit as an exhibit to his brief. See Gabrielson v. Brown, 7 Vet.App. 36, 41–42 (1994). The appellant is, of course, free to submit additional evidence, including the asserted statement referred to above, to the Board in connection with the remand that we will order in this opinion. See id. at 42.

### B. PTSD Claim

■ **1. Well–Groundedness.** "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." Murphy v. Derwinski, 1 Vet. App. 78, 81 (1990). The Court has held that a PTSD claim is well grounded where the veteran has "submitted medical evidence of a current disability; lay evidence (presumed to be credible for these purposes) of an in-service stressor, which in a PTSD case is the equivalent of in-service incurrence or aggravation; and medical evidence of a nexus between service and the current PTSD disability". Cohen (Douglas) v. Brown, 10 Vet.App. 128, 136–37 (1997). The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. See Elkins v. West, 12 Vet.App. 209, 219 (1999) (en banc) (quoting Robinette v. Brown, 8 Vet.App. 69, 75–76 (1995)). The determination whether a claim is well grounded is subject to de novo review by this Court. See Elkins, supra; Robinette, 8 Vet.App. at 74.

■ Pursuant to section 5107(a), once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. See 38 C.F.R. § 3.159 (1998); Littke v. Derwinski, 1 Vet.App. 90, 91–92 (1990). The section 5107(a) duty to assist may, in an appropriate case, include a VA duty to seek to afford the claimant an opportunity to respond to a VA request for additional information when the information provided by the claimant is found to be insufficient, see Cohen (Douglas), 10 Vet.App.

at 148–49, and to inform the claimant of additional information sought by VA, *Zarycki v. Brown,* 6 Vet.App. 91, 99–100 (1993). The Secretary has a duty to advise a claimant that he or she may corroborate his or her assertions by submitting alternate forms of evidence, such as statements from eyewitnesses. *See* 38 C.F.R. § 3.159; *Dixon v. Derwinski,* 3 Vet.App. 261, 263 (1992). In addition, at a VA hearing (including hearings before the BVA) the presiding officer has "the responsibility ... to ... suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c)(2) (1998); *see Douglas v. Derwinski,* 2 Vet.App. 435, 440–42 (1992) (en banc) (reaffirming *Douglas v. Derwinski,* 2 Vet.App. 103, 110 (1992)).

■ Establishing service connection for PTSD requires (1) a current, clear medical diagnosis of PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between current symptomatology and the specific claimed in-service stressor. *See* 38 C.F.R. § 3.304(f); *Anglin v. West,* 11 Vet.App. 361, 367 (1998); *Cohen (Douglas),* 10 Vet.App. at 138. The evidence required to support the occurrence of an in-service stressor varies "depending on whether or not the veteran was 'engaged in combat with the enemy'.... Where ... VA determines that the veteran did not engage in combat with the enemy ... the veteran's lay testimony, by itself, will not be enough to establish the occurrence of the alleged stressor." *Zarycki,* 6 Vet.App. at 98 (citations omitted). The requisite additional evidence may be obtained from sources other than the veteran's SMRs. *See Moreau v. Brown,* 9 Vet.App. 389, 395 (1996), *aff'd,* 124 F.3d 228 (Fed.Cir.1997) (table).

■ The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Gabrielson,* 7 Vet.App. at 39–40.

■ In the instant case, the Court, upon de novo review, holds that the veteran has submitted a well-grounded claim for service connection for PTSD. He has provided medical evidence of a current diagnosis of PTSD (R. at 159, 160, 169), his lay evidence of a sexual assault as the noncombat, in-service stressor (R. at 235, 239), and medical-nexus evidence generally linking his PTSD to his service (R. at 169). The Board thus properly found the claim well grounded and proceeded with a merits adjudication of the PTSD claim. *See Cohen (Douglas),* 10 Vet.App. at 136–37.

*2. Applicability of MANUAL 21–1 Provisions.* In its 1997 decision, the Board did not discuss the special evidentiary procedures for PTSD claims based on personal assault that were established in February 1996 in VA Adjudication Procedure Manual M21–1 (Manual M21–1), Part III, ¶ 5.14c (Feb. 20, 1996), and that are a substantially expanded version of former Manual M21–1, Part III, ¶ 7.46c(2) (Oct. 11, 1995) (evidence of behavior changes that may indicate occurrence of personal assault as in-service stressor in PTSD context). *See YR v. West,* 11 Vet.App. 393, 398–99 (1998); *Anglin,* 11 Vet. App. at 368. "This Court has previously held that the Manual M21–1 provisions in ¶ 7.46 dealing with PTSD are substantive rules that are 'the equivalent of [VA][r]egulations'." *Cohen (Douglas),* 10 Vet.App. at 139 (quoting *Hayes v. Brown,* 6 Vet.App. 66, 67 (1993)); *see also Smith (Bernard) v. Brown,* 10 Vet. App. 44, 48 (1996); *Dixon,* 3 Vet.App. at 263; *Fugere v. Derwinski,* 1 Vet.App. 103, 109 (1990), *aff'd,* 972 F.2d 331 (Fed.Cir.1992). Moreover, this Court has recently required that VA follow the new provisions in ¶ 5.14c. *YR, supra.* The new provisions at ¶ 5.14c were not in effect at the time of the RO decision but were in effect at the time of the 1997 BVA decision.

■ *a. Effect of* **Routen v. West:** Before turning to consideration of ¶ 5.14c, we must consider another threshold matter. This Court held in *Karnas v. Derwinski* that "where the law or regulation changes after a claim has been filed or reopened but not before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should and we so hold will apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so." *Karnas*, 1 Vet.App. 308, 312–13 (1991). The change in Manual M21–1 provisions applicable to PTSD claims would normally require this Court to remand the claim to the Board for readjudication because at the time of the 1994 RO decision neither ¶ 7.46c(2) nor ¶ 5.14c were in effect. *Id.* at 311. However, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that a regulatory change in an evidentiary burden constitutes neither new and material evidence to reopen a claim nor an intervening change in law to create a new basis for entitlement. *Routen v. West*, 142 F.3d 1434, 1440, 1442 (Fed.Cir.1998), *aff'g sub nom. Routen v. Brown*, 10 Vet.App. 183, 187 (1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998). In *Anglin, supra*, therefore, this Court held that the new Manual M21–1, Part III, ¶ 5.14c, regulatory provisions would not provide a basis to reopen or remand a previously and finally disallowed PTSD claim.

Accordingly, if the PTSD claim before us in the instant case is part of a claim to reopen, *Routen* would prohibit a remand unless there were new and material evidence to reopen the nervous-condition claim that had been disallowed in September 1979. *See Routen, supra.* Although in 1993 the appellant framed his PTSD claim as one to reopen (R. at 157), the December 1994 RO decision did not discuss reopening any prior disallowed claim (*see* R. at 209). It appears that the veteran's nervous-condition claim was pending before the Board at that time because, although he had filed a Substantive Appeal to the BVA (R. at 95), the ROA contains no subsequent BVA decision on that issue. In addition, in 1996, while the veteran's claim was pending before the Board, the

Federal Circuit held that "a claim based on the diagnosis of a new mental disorder, taken alone or in combination with a prior diagnosis of a related mental disorder, states a new claim, ... when the new disorder had not been diagnosed and considered at the time of the prior [N]otice of [D]isagreement." *Ephraim v. Brown*, 82 F.3d 399, 402 (Fed. Cir.1996), *vacating Ephraim v. Brown*, 5 Vet.App. 549 (1993); *see also Ephraim*, 5 Vet.App. at 552–53 (Steinberg, J., dissenting). Here, the veteran had not been diagnosed as having PTSD at the time of the apparent 1979 RO denial of service connection for a nervous condition. *See* R. at 84, 95. In the 1997 BVA decision, ·the Board thus correctly reviewed the appellant's PTSD claim as an original claim, and not a claim to reopen. R. at 3. Hence, because the current appeal does not involve a claim to reopen as to the nervous-condition claim, the *Routen* holding has no application to this case. *Cf. Anglin, supra.* We thus proceed to consider the applicability of Manual M21–1, Part III, ¶ 5.14c.

*b. Impact of the Manual 21–1 provision:* The general Manual M21–1 provisions on PTSD claims in ¶ 5.14 require: "In cases where available records do not provide objective or supportive evidence of the alleged in-service stressor, it is necessary to develop for this evidence." MANUAL M21–1, Part III, ¶ 5.14b(3). As to personal-assault PTSD claims, more particularized requirements are established. Specifically, MANUAL M21–1, Part III, ¶ 5.14c, states in pertinent part:

(1) Veterans claiming service connection for disability due to an in-service personal assault face unique problems documenting their claims. Personal assault is an event of human design that threatens or inflicts harm. Examples of this are rape, physical assault, domestic battering, robbery, mugging, and stalking. Although most often these incidents involve female veterans, male veterans may also be involved. *Care must be taken to tailor development for a male or female veteran. These incidents are often violent and may lead to the development of PTSD secondary to personal assault.* It is possible for someone to develop symptoms of PTSD as a

result of this type of stressful experience. . . .

(2) Because assault is an extremely personal and sensitive issue, many incidents of personal assault are not officially reported, and *victims of this type of in-service trauma may find it difficult to produce evidence to support the occurrence of the stressor.* Therefore, alternative evidence must be sought.

(3) To service connect PTSD, there must be credible evidence to support the veteran's assertion that the stressful event occurred. This does not mean that the evidence actually proves that the incident occurred, but rather that *the preponderance* of evidence supports the conclusion that it occurred.

. . . .

(5) The service record may be devoid of evidence because many victims of personal assault, especially sexual assault and domestic violence, do not file official reports either with military or civilian authorities. *Therefore, development to alternative sources for information is critical. Alternative sources* that may provide credible evidence of the in-service stressor *include:*

(a) Medical records from private (civilian) physicians or caregivers who may have treated the veteran either immediately following the incident or sometime later;

(b) Civilian police reports;

(c) Reports from crisis intervention centers such as rape crisis centers or centers for domestic abuse;

(d) Testimonial statements from confidants such as family members, roommates, fellow service members, or clergy;

(e) Copies of personal diaries or journals.

(6) Identifying possible sources of alternative evidence will require that you ask the veteran for information concerning the incident. This should be done as compassionately as possible in order to avoid further traumatization. *The PTSD stressor development letter used by regional offices to solicit details concerning the in-service stressful incident may be inap-* propriate for this type of PTSD claim. *Therefore, if the stressful incident is a personal assault, use Exhibit A.3 or a letter developed locally for this type of claim.*

(7) *The suggested attachment to the development letter shown in Exhibit A.1 is inappropriate for PTSD claims based on personal assault and should not be used for that purpose. Instead use Exhibit A.4 to this letter or an attachment developed locally.*

(8) Rating board personnel must carefully evaluate all the available evidence. If the military record contains no documentation that a personal assault occurred, alternative evidence might still establish an in-service stressful incident. *Behavior changes that occurred at the time of the incident may indicate the occurrence of an in-service stressor.* Examples of behavior changes that might indicate a stressor are (but not limited to):

(a) Visits to medical or counseling clinic or dispensary without a specific diagnosis or specific ailment;

(b) Sudden requests that the veteran's military occupational series or duty assignment be changed without other justification;

. . . .

(e) Lay statements describing episodes of depression, panic attacks or anxiety but no identifiable reasons for the episodes;

. . . .

(h) Evidence of substance abuse such as alcohol or drugs;

. . . .

(9) Rating boards may rely on *the preponderance* of evidence to support their conclusions even if the record does not contain direct contemporary evidence. *In personal assault claims, secondary evidence may need interpretation by a clinician, especially if it involves behavior changes. Evidence that documents such behavior changes may require interpretation in relationship to the medical diagnosis by a VA neuropsychiatric physician.*

MANUAL M21–1, Part III, ¶ 5.14c(1)–(3), (5)–(7), (8)(a), (8)(b), (8)(e), (8)(h), (8)(n), (9) (emphasis added).

Of particular pertinence to this case are the provisions of subparagraphs (8) and (9), above, stating that "[b]ehavior changes that occurred at the time of the incident may indicate the occurrence of an in-service stressor" (MANUAL M21–1, Part III, ¶ 5.14c(8)); and that "secondary evidence may need interpretation by a clinician, especially if it involves behavior changes" and that "[e]vidence that documents such behavior changes may require interpretation in relationship to the medical diagnosis by a VA neuropsychiatric physician" (MANUAL M21–1, Part III, ¶ 5.14c(9)). When read together, subparagraphs (8) and (9) show that in personal-assault cases the Secretary has undertaken a special obligation to assist a claimant, here one who has submitted a well-grounded claim, in producing corroborating evidence of an in-service stressor.

 The Court further notes that it has previously stated that "something more than medical nexus evidence is required to fulfill the requirement for 'credible supporting evidence' ", *Moreau,* 9 Vet.App. at 396, and that "[a]n opinion by a mental health professional based on a postservice examination of the veteran cannot be used to establish the occurrence of the stressor," *Cohen (Douglas),* 10 Vet.App. at 145 (citing *Moreau, supra* ). *See also YR,* 11 Vet.App. at 397–98 (quoting these statements in *Cohen (Douglas),* and *Moreau,* both *supra* ). These quoted categorical statements were made in the context of discussing PTSD diagnoses other than those arising from personal assault. As. to such personal-assault cases, as we have seen, VA has provided for special evidentiary-development procedures, including interpretation of behavior changes by a clinician and interpretation in relation to a medical diagnosis. MANUAL M21–1, Part III, ¶ 5.14c(8), (9). To that extent, the above categorical statements in *Cohen (Douglas)* and *Moreau,* and other cases where they may have been echoed, are not operative. Indeed, in *YR,* where the veteran had been placed under hypnosis by a licensed social worker who concluded thereafter that there was no doubt that the

veteran had been raped traumatically, the Court, after having quoted the above *Cohen* statement and cited *Moreau,* nonetheless, remanded the claim because, among other deficiencies in the adjudication, the Board had "entirely failed to consider the hypnosis evidence, let alone discuss its weight and credibility" or provide an adequate statement of "reasons [or] bases ... for its acceptance or rejection". *YR,* 11 Vet.App. at 397–99.

Moreover, the Court notes that in two places Manual M21–1, Part III, ¶ 5.14c, appears improperly to require that the existence of an in-service stressor be shown by "the preponderance of the evidence". MANUAL M21–1, Part III, ¶ 5.14c(3), (9). Any such requirement would be inconsistent with section 5107(b) of title 38, U.S.Code, which requires that when "there is an approximate balance or positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant." 38 U.S.C. § 5107(b). Section 5107(b) codifies the so-called equipoise doctrine under which once a claimant submits a well-grounded claim, that claim must be granted unless the evidence preponderates against the claim. *Alemany v. Brown,* 9 Vet.App. 518, 519–20 (1996); *Gilbert v. Derwinski,* 1 Vet.App. 49, 55–56 (1990); *see also YR,* 11 Vet.App. at 399 ("[i]n a system where equipoise is the standard of proof, evidence of this nature cannot be ignored"). On remand, in adjudicating the existence of an in-service stressor and any other material issue, the equipoise standard of proof, of course, not the preponderance standard, must be applied.

*3. Review of Merits Adjudication.* As to the merits adjudication of this case, the appellant asserts the sexual assault as the noncombat-related stressor. Br. at 6; *see also* R. at 157–59, 167–73, 225–26, 231–44. In its 1997 decision, the Board recognized that "credible evidence from any source" can be used to corroborate a claimed in-service stressor (citing *Cohen (Douglas),* 10 Vet.App. at 142, and *Moreau,* 9 Vet.App. at 394–95) but, after considering only the veteran's and his counsel's statements, concluded that "the absence of any corroborating evidence [was]

sufficient to render his stressor invalid". R. at 7–8. Having concluded that credible supporting evidence of a stressor had not been provided, the Board denied service connection without addressing the veteran's medical evidence of a current diagnosis of PTSD or of a nexus between the diagnosis and the alleged stressor. R. at 8–9.

The Secretary concedes, however, that the veteran "has both a current, clear medical diagnosis of PTSD (R. at 159–61, 169) and medical evidence of a causal nexus between his current symptomatology and the specific claimed in-service stressor (R. at 169)" and that "the only issue that remains is whether or not [the appellant] has provided credible supporting evidence that the claimed in-service stressor actually occurred." Motion at 14. The Secretary, citing YR, 11 Vet.App. at 398–99, and Manual M21–1, Part III, ¶ 5.14c(5), acknowledges that a veteran's records "may be devoid of evidence pertaining to a sexual assault because many victims of such an assault do not file official reports . . . and that . . . all of the other evidence in the record which pertains to the assault should be carefully analyzed and discussed"; and that the veteran has testified that he "tried to report this assault in service but was discouraged from doing so". Motion at 16. The Secretary then argues, as the Board found (R. at 8), that there was "no evidence" to corroborate the veteran's own statements (Motion at 16). We disagree.

In her August 1979 letter, the appellant's wife stated that the veteran's mother had written to her that "something had happened to him in the service". R. at 79–80. This seems to be the sort of testimony from "confidants such as family members, roommates, fellow service members, or clergy" that was contemplated by VA in ¶ 5.14c(5)(d) of Manual M21–1, Part III, as well as by the letter formats expressly developed for use in personal-assault claims, MANUAL M21–1, Part III, ¶ 5.14, Exhibits A.3, A.4. In addition, testimonial statements from other persons involved, such as the sergeant who allegedly talked the veteran out of reporting the assault and the soldiers in the barracks who apparently had seen the veteran have "some sort of an attack", might provide pertinent

corroboration. *Ibid.* Moreover, the marked behavior changes documented from December 9, 1959—such as the appellant's anxiety attacks in December 1959 and January 1960 without obvious causes (R. at 26–28, 33, 51), his continued in-service anxiety even with a reduced duty assignment (R. at 51), his history of psychiatric treatment with a wide variety of diagnoses (R. at 51, 62–71, 98–105, 108), and his history of alcohol abuse (R. at 68, 73, 79–80, 87–88, 102)—but not documented before that date, should be examined and clinically interpreted to determine whether they constitute evidence of "[v]isits to a medical or counseling clinic or dispensary without a specific diagnosis or specific ailment", "[s]udden requests that . . . duty assignments be changed", "[l]ay statements describing episodes of depression, panic attacks or anxiety", and "[e]vidence of substance abuse such as alcohol or drugs" that "may indicate the occurrence of an in[-]service stressor." MANUAL M21–1, Part III, ¶ 5.14c(8), (8)(a), (8)(b), (8)(e), (8)(h), (9). Also, the veteran's description of an unidentified sergeant's comments to him about being imprisoned if he reported an assault (R. at 236–37) lends some support to his having provided another explanation for his severe anxiety attacks in service. The Board failed to address all of the above evidence and provide an adequate statement of reasons or bases for its acceptance or rejection. *See* YR, 11 Vet.App. at 398–99; *Allday* and *Gabrielson,* both *supra.*

In addition, the Court notes the efforts of the RO in its May 16, 1994, letter to attempt to alert the veteran to the need to gather stressor evidence. R. at 164. Such a letter was perfectly appropriate at the time it was sent. However, since then, with the adoption of ¶ 5.14c, VA has decided that a special PTSD personal-assault letter should be sent. *See* MANUAL M21–1, Part III, ¶ 5.14c(6), (7); *see also* MANUAL M21–1, Part III, ¶ 5.14, Exhibits A.3, A.4. In the questionnaire to be enclosed with such letter, the veteran is advised to seek statements from "a roommate, family member, chaplain, clergy or fellow service person" in whom he may have confided and to provide any statements that might aid in the adjudication of his claim. MANUAL M21–1, Part III, ¶ 5.14, Ex-

hibit A.4(4). The veteran is also asked to provide any evidence of these same factors showing behavior changes listed in ¶ 5.14c(8). The BVA cannot ignore provisions of the Manual M21–1 relating to PTSD that are favorable to a veteran when adjudicating that veteran's claim. *See Cohen (Douglas)*, 10 Vet.App. at 138–39; *Hayes* and *Fugere*, both *supra*. As we have seen, because of the unique problems of documenting personal-assault claims, the RO is responsible for assisting the claimant in gathering, from sources in addition to in-service records, evidence corroborating an in-service stressor, by sending a special letter and questionnaire, by carefully evaluating that evidence including behavior changes, and by furnishing a clinical evaluation of behavior evidence. MANUAL M21–1, Part III, ¶ 5.14c; *see also* 38 C.F.R. § 3.103(c)(2); *Dixon* and *Douglas*, both *supra*. By failing to remand the matter so that the RO might assist the veteran in seeking and interpreting such alternative evidence, the BVA failed to comply with ¶ 5.14c and the duty to assist pursuant to section 5107(a). *See also* 38 C.F.R. § 19.9(a) (1998) ("[i]f further evidence . . . is essential for proper appellate decision, [the BVA] shall remand the case to the [RO]").

Therefore, the Court will remand to the Board for it to attempt to verify whether the asserted sexual-assault stressor occurred. On remand, all evidentiary development called for by the Manual M21–1 should thus be undertaken and, in view of the circumstances here, this should include interpretation by a clinician of behavior changes and evidence pertaining thereto. *See* 38 U.S.C. § 5107(a); 38 C.F.R. § 3.159; *Cohen (Douglas)*, 10 Vet.App. at 148–49 (noting VA duty under section 5107(a) and Manual M21–1 to assist veteran in development of evidence to verify noncombat stressor as to well-grounded PTSD claim); MANUAL M21–1, Part III, ¶ 1.05a ("on request by a beneficiary or authorized representative, [VA should] make reasonable efforts to assist claimants in securing public documents and other evidence"), ¶ 5.14c. If the stressor is verified, the Board must then proceed to adjudicate fully the matter of whether the veteran suffers from service-connected PTSD. *See Cohen (Douglas)*, 10 Vet.App. at 150 (remand-

ing to Board question whether asserted stressors contributed to veteran's current symptoms of PTSD).

*4. Response to Dissent.* Our dissenting colleague raises essentially three points of disagreement. First, he challenges our consideration of the Manual M21–1 provision dealing specifically with personal-assault cases when the appellant did not cite that provision to the Court in his brief. As we noted in part II.B.2., above, this Court has held the predecessor Manual M21–1 provisions in ¶ 7.46 (1995) to be the equivalent of binding VA regulations. *See Cohen (Douglas)*, 10 Vet.App. at 139; *Hayes, supra*. The successor provision, ¶ 5.14, and specifically subparagraph c, was raised by the Secretary in his pleading, Motion at 16, along with citation to *YR, supra*. We think it the better course for this Court not to hold that the appellant has waived enforcement of a Manual M21–1 provision regarding personal-assault PTSD claims that this Court applied for the first time in *YR*, a case decided on August 27, 1998, after the appellant had filed his brief in this case. The appellant's attorney in this case, for example, was aware of and did cite the Manual M21–1 provision on PTSD, ¶ 50.45, from 1989, which did not include any special provision on personal assault as the asserted stressor. Appellant's Br. at 16–17. Because the Manual M21–1 is not published and is not readily available, a general practitioner before this Court is largely dependent on references in this Court's published opinions to such rather esoteric regulation-like provisions. The Manual M21–1 ¶ 5.14c provision on personal-assault PTSD claims was not discussed in any opinion of this Court until August 11, 1998, in *Anglin*, 11 Vet.App. at 368; *cf. Dizoglio v. Brown*, 9 Vet.App. 163, 167 (1996) (citing, without description, MANUAL M21–1 ¶ 5.14 as part of a *"see also"* cite following a cite to ¶ 7.46(g)(3) in a *non*-personal-assault context), six days before the appellant's brief was filed here, and even then subparagraph c was not specifically cited there by the Court.

Indeed, this Court routinely remands cases under *Karnas, supra*, for compliance with new law or regulation, without either party's having raised the applicability of the new

legal authority. *See, e.g., Kingston v. West,* 11 Vet.App. 272 (1998) (remanding for Board application of amended 38 C.F.R. § 4.130); *Cohen (Douglas),* 10 Vet.App. at 138–39 (applying more recent version of Manual M21–1 provision on PTSD claims that was added while appellant's claim was pending); *Hayes v. Brown,* 5 Vet.App. 60, 67 (1993) (same).

Under these circumstances, and in light of this Court's longstanding adherence to *Karnas, supra,* as to the applicability of regulatory changes while an appeal is pending (here the RO decision was issued in December 1994, well over a year before ¶ 5.14 was adopted), the Court believes that substantial interests of justice dictate that the Court require the Secretary to adhere to his own regulatory provisions, just as did the Court in *YR* and *Cohen (Douglas),* both *supra. See Cohen (Douglas),* 10 Vet.App. at 143 (citing *Sutton v. Brown,* 9 Vet.App. 553, 568–69 (1996) (citing *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), *Vitarelli v. Seaton,* 359 U.S. 535, 538, 539–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), and *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)), to the effect that "the Board is not free to disregard VA regulations"). Moreover, the U.S. Supreme Court has made clear that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law". *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

The dissent cites *Carbino v. West,* 168 F.3d 32 (Fed.Cir.1999). The question there, however, was whether under its rules this Court could properly deny consideration of an argument not raised until the reply brief, *id.* at 34; not, as here, whether the Court has the authority to "decide all relevant questions of law", 38 U.S.C. § 7261(a)(1), whether raised by a party or not (a question the Federal Circuit did not address in *Carbino* ). In fact, in each of the additional cases cited by the dissent, we find support for the proposition that U.S. courts of appeals have the discretion to raise legal issues not raised by a party. *See Davis v. United States,* 512 U.S. 452, 464, 465, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Scalia, J., concurring) (although "refusal to consider arguments not raised is a sound prudential practice, ... there are times when prudence dictates the contrary"; courts have "obligation to decide according to law"); *United States v. Dickerson,* 166 F.3d 667, 683–84 (4th Cir.1999) (considering constitutionality of statute where U.S. Government elected not to pursue issue); *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) (although appellant courts are essentially "arbiters of legal questions presented and argued by the parties before them[,] ... not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research."); *see also Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases").

Next, the dissent argues that the veteran's PTSD claim is not well grounded because his self-asserted stressor is not corroborated by other evidence. We find this to be quite a surprising proposition, given that *Cohen (Douglas),* 10 Vet.App. at 137, held unequivocally that a PTSD claim was well grounded where there was "lay evidence (presumed to be credible for these purposes [of determining well groundedness] ) of an in-service stressor" (*accord Winters v. West,* 12 Vet. App. 203, 208 (1999) (en banc); *Henderson v. West,* 12 Vet.App. 11, 19 (1998); *Samuels v. West,* 11 Vet.App. 433, 435 (1998)) and given that *YR,* authored by the dissenting judge here, held that the PTSD claim there was well grounded when the occurrence of the in-service stressor was based, in part, on the veteran's assertion of a sexual assault, "[a]ssuming the truth of [the veteran's] and her sister's testimony that [the veteran] was raped in service". *YR,* 11 Vet.App. at 398.

Finally, our dissenting colleague further contradicts his own holding in *YR* by insisting that corroboration of an in-service stres-

284

sor by the testimony of a mental-health professional in a personal-assault case can**not** suffice as the corroboration of a noncombat stressor that is required by 38 C.F.R. § 3.304(f) for service connection for PTSD to be awarded in the adjudication of the claim on the merits. As we pointed out in part II.B.2.b., above, Manual M21–1 ¶ 5.14c(8) and (9), when read together, show that in personal-assault cases the Secretary has undertaken a special obligation to assist a claimant, here one who has submitted a well-grounded PTSD claim, in producing corroborating evidence of an in-service stressor, including interpretation of the veteran's behavior changes by a clinician. *Ante* at 279–280. Hence, as we also pointed out, *YR* had remanded the claim there in part because the Board had "entirely failed to consider the hypnosis evidence [provided by the licensed social worker], let alone discuss its weight and credibility" or provide an adequate statement of "reasons or bases ... for its acceptance or rejection". *Ante* at 280 (quoting *YR,* 11 Vet.App. at 398).

For the above reasons, we cannot agree with our dissenting colleague.

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court vacates the BVA decision and remands the PTSD issue for further expeditious development, *see* 38 U.S.C. §§ 5107(a); 38 C.F.R. §§ 3.103(c)(2), 3.159, 3.304(f), 19.9(a); MANUAL M21–1, Part III, ¶ 5.14c, and expeditious issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. § 7104(a), (d); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday,* 7 Vet.App. at 533–34. The Secretary's motion to strike is granted and his motion to affirm is denied. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129,

141 (1992). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.

HOLDAWAY, Judge, dissenting:

I respectfully dissent with the holding of the majority. First of all, I dissent because by sua sponte raising issues not appealed, the majority's opinion is directly in conflict not only with precedent established by this Court and the Federal Circuit, but also with longstanding rules of procedures in appellate courts.

In *Carbino v. Gober,* 10 Vet.App. 507 (1997), this Court declined to address a duty to assist argument relating to MANUAL M21–1 which was first raised by the appellant in his reply brief. *Id.* at 511. The Court found that the appellant violated "rule 28(a)(3) of the Court's Rules of Practice and Procedure which requires a statement of issues in the appellant's brief" rather than in his reply brief. *Id.* On appeal, the U.S. Court of Appeals for the Federal Circuit affirmed this decision. *Carbino v. West,* 168 F.3d 32 (Fed. Cir.1999). In affirming this decision, the Federal Circuit embellished upon this Court's narrow holding by stating:

The Court of Veterans Appeals is authorized by statute to prescribe rules for the conduct of its proceedings. The court's Rule 28(a)(3) is similar to the corresponding rule of the Federal Rules of Appellate Procedure. In applying that rule, courts have consistently concluded that the failure of an appellant to include an issue or argument in the opening brief will be deemed waiver of the issue or argument. We agree with the Court of Veterans Appeals

that the question ... was not properly and timely raised under that court's rules.

*Id.* at 34 (citations omitted). In that case, the appellant argued that 38 U.S.C. § 7261(a)(1) obliged the Court to " 'decide all relevant questions of law' necessary to its decision, and that the untimely raised issue was such a question of law." Id. (quoting 38 U.S.C. § 7261(a)(1)). However, the Federal Circuit rejected this argument by stating: "Section 7261(a) provides only that the Court of Veterans Appeals 'shall' decide all relevant questions of law 'to the extent necessary to its decision and *when presented.*' " *Id.* at 34–35 (quoting 38 U.S.C. § 7261(a)(1) (1994)) (emphasis added by Federal Circuit).

The opinion of the Federal Circuit is consistent with long established rules of appellate practice. The role of appellate courts is to review issues presented to them. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983). It is "sound judicial practice" to avoid issues not raised by the parties. *United States v. Dickerson,* 166 F.3d 667, 672 (4th Cir.1999) (Michael, C.J., dissenting) (citing *Davis v. United States,* 512 U.S. 452, 464, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)) (Scalia, J., concurring). Appellate courts perform their role as arbiters best "when the parties raise the issues, and both sides brief and argue them fully." *Id.* In other words, the role of an appellate court does not encompass presenting arguments on behalf of a party but rather deciding issues presented to it.

In this case, the appellant, through his attorney, has not raised the issues discussed by the majority: inadequate reasons or bases or a violation of the duty to assist in general, let alone specifically mentioning the particular MANUAL M21–1 provisions. By failing to raise such arguments in his brief, the appellant has effectively waived his right to appellate review on these issues. The Secretary, of course, has not had an opportunity to respond to the majority's "arguments." I do not believe, therefore, that the Court, in a case where the appellant is represented by qualified counsel, should sua sponte raise these issues when they are not presented for review. By raising issues not presented, the majority's holding is in conflict with 38 U.S.C. § 7261(a) and the Federal Circuit's interpretation of that statute in *Carbino.*

Not only has the appellant failed to raise the issue of the duty to assist before the Court, he never raised that issue before the Board. *Compare Carbino, supra* (noting the importance of the fact that the appellant had not raised the duty to assist argument with the Board) *with Ledford v. West,* 136 F.3d 776 (Fed.Cir.1998) (Court's jurisdiction premised on issues raised to the Board). In fact, the appellant, through his accredited service organization, conceded before the Board that no other evidence is available by stating "The events described by Mr. Patton are in the large majority of case [sic] impossible to verify through official channels." Rather than attempt to retrieve information which does not exist, the appellant focused his argument on the credibility of his testimony by arguing "We believe that Mr. Pattons [sic] testimony, under oath, is credible. That testimony, along with Dr. Billingsly's thorough report should allow a grant of the benefit sought."

Nonetheless, the majority contends that the Board failed to give adequate reasons and bases for its decision. On the contrary, I would find that the Board more than met this requirement. In its decision, the Board correctly held that the appellant suffered from a noncombat-related stressor and, thus, he must present credible evidence supporting his allegations. The Board then noted that the appellant conceded that the only contemporary evidence to corroborate his alleged stressor were his service medical records which reference some psychological problems. The Board then concluded that this evidence was insufficient to corroborate his claim of an in-service stressor. In sum, the Board found that no evidence in the claims file corroborates the appellant's allegations nor has the appellant pointed to any evidence available which might provide such support.

The most likely reason the appellant did not raise duty to assist before the Board or

this Court is because he realized that there is no other information available to retrieve. In this case, the appellant, VA, and the Board exhaustively researched virtually every avenue to substantiate this claim. The fact of the matter is that there is apparently no evidence available. The appellant, therefore, has failed to carry his burden of establishing a well-grounded claim. The only piece of evidence that the appellant claims to exist which is not in the record on appeal is the testimony of the unnamed sergeant (or corporal—the appellant was not certain) from an unknown unit who allegedly instructed him not to tell anyone about the assault. Unquestionably, the Secretary has not assumed the duty to identify every noncommissioned officer stationed at Fort Bragg 40 years ago, produce their current addresses (assuming they could be found and the Privacy Act permitted their release), and query them to provide corroborating evidence to this claimant. The VARO given this task would have to devote virtually full time to this case alone.

The majority further contends that the appellant's history should be "clinically interpreted" to determine whether it constitutes corroborating evidence. However, this has already been performed by Dr. Billingsly in his January 1994 compensation and pension examination. Dr. Billingsly, after reviewing the appellant's entire history, concluded that it was entirely consistent with a person who had suffered such an in-service stressor. Yet this Court has held that such evidence cannot constitute corroborating testimony because the treating physician has no personal knowledge of the events in question. *See Moreau v. Brown,* 9 Vet.App. 389 (1996); *cf. LeShore v. Brown,* 8 Vet.App. 406 (1995). Therefore, not only has this evidence already been produced, such evidence would never be of assistance to the appellant's claim under the Court's case law.

The crux of this case is even after years of attempting to produce evidence, the appellant has never submitted a well-grounded claim. Contrary to the majority's findings, there is no evidence that the in-service stressor occurred. First, the majority opinion attempts to bootstrap the appellant's own

statements to provide corroborating evidence. The majority's conclusory statement in finding that the appellant has satisfied the requirement of a well-grounded claim, "He has provided ... lay evidence of a sexual assault as a noncombat in-service stressor," cites to the appellant's own oral testimony before the Board. Obviously, the appellant's own testimony cannot corroborate his own allegations.

Later in the opinion, the majority finds that the Board failed to discuss other evidence in the record which might corroborate the appellant's allegations. This analysis is flawed for several reasons. First, the majority never finds that such evidence does corroborate the appellant's allegations, but avers that the Board erred by failing to discuss them. In fact, the majority states "If the stressor is verified, the Board must then proceed to adjudicate fully the matter...." However, the majority had already found that the appellant had submitted a well-grounded claim, thus, his stressor must already be corroborated, yet the majority fails to state the grounds for such an assertion, other than the appellant's own testimony. Second, none of the evidence offered by the majority supports the appellant's allegations. While this evidence certainly does not contradict the appellant's testimony, only by drawing broad and groundless inferences can the majority use this evidence to corroborate the appellant's testimony. For example, the statement by the appellant's mother that "something had happened to him in the service" could mean virtually anything including his self-described "shame" for failure to complete his military service. His mother has no firsthand knowledge of the incident nor does she state that the appellant had confided in her about the assault. The Board's basic conclusion, that the appellant has failed to offer any evidence to corroborate his story is correct. None of the evidence cited to by the majority offers and proof to substantiates the appellant's claims. The Board, therefore, correctly found his claim not well grounded. For these reasons, I would affirm the decision of the Board.