**Robert N. DIXON, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1073.**

United States Court of Veterans Appeals.

Sept. 23, 1992.

Robert N. Dixon, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr., Washington, D.C., were on the pleadings for appellee.

Before KRAMER, MANKIN and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Robert N. Dixon appeals from an August 30, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied him entitlement to service connection for residuals of frozen feet. *Robert N. Dixon*, BVA 90–29897 (Aug. 30, 1990). We find that the Board failed to assist appellant in developing his claim through sources of evidence other than his lost service records. Further, the decision failed to explain the Board's reasons or bases for concluding that the search for appellant's lost records had been properly terminated. We therefore vacate the BVA decision and remand the case for further adjudication.

## I.

The veteran served in the U.S. Army from March 1951 to March 1953. Apparently, nearly all official records of his service were destroyed in the 1973 fire at the National Personnel Records Center (NPRC) in St. Louis.

In August 1989 appellant filed with the Department of Veterans Affairs (VA) a claim for service connection for residuals of frostbite. He contended that his feet were frozen when he participated in a parachute jump during training exercises in below-zero weather at Fort Campbell, Kentucky, in 1952. R. at 9, 12, 21. In support of his claim, he submitted a May 1989 report of Dr. Rosemarie Rynkiewicz, a podiatrist, who had examined the veteran after reviewing his medical history. Dr. Rynkiewicz noted appellant's complaints of persistent burning, tingling, and itching sensations in his feet, which he said had become progressively worse over a period of many years. The podiatrist offered the following assessment: "Peripheral neuropathy. May be secondary to previous frost bite history or alcohol overuse." R. at 13. Appellant also submitted a letter in which he stated:

> You probably wondered why I waited some thirty odd years to file a claim. For the most part I recall having a problem with my feet soon after I contacted [sic] the frostbite while in military service. At that time I just shrugged it off, being only 22 years old. However as the years passed the problem became more painful, and difficult.

R. at 15.

Soon after appellant filed his claim, the VA initiated several requests for his service medical records. Each inquiry, however, proved fruitless. R. at 25; see also Appellee's Supplemental Memorandum. (An additional search was undertaken at the request of the Office of General Counsel subsequent to initiation of this appeal. See Appellee's Supplemental Response to Court Order. The only result was a report from Wendy Hollingsworth, Acting Chief of the Records Reconstruction Branch, NPRC, to the effect that the records are likely to have been destroyed in the 1973 fire.)

In a February 1990 rating decision, the VA denied appellant's claim. The rating board determined that because no documentary evidence was available to corroborate appellant's contention that he had been treated for frostbite in service, there was no basis for granting the claim "without resort to speculation." R. at 18. Appellant promptly filed a Notice of Disagreement with the unfavorable rating action. His representative then filed a statement that provided details of the dates and places of appellant's purported treatment for frostbite during service. The statement also requested that additional efforts be made to locate appellant's service medical records. R. at 28. In response, the VA regional office determined that no further development of the claim was warranted. R. at 30. Appellant's representative then filed a Form 1–9 that again requested that "alternate sources of records" be investigated. R. at 32.

In its August 30, 1990, decision, the Board denied the claim, explaining:

> In order to establish service connection for frozen feet, the veteran must show through affirmative facts, such as inservice medical records, that this disorder was present during service or is otherwise related to service.... [B]ecause the veteran's contentions cannot be substantiated by medical or other affirmative evidence, his claim for service connection for frozen feet must be denied.

*Dixon*, BVA 90–29897, at 3.

## II.

When a veteran presents a claim for VA disability benefits and supports the claim with "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the VA has a duty to assist the veteran "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007(a)). To be well grounded, a claim "need not be conclusive," *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990), but must be accompanied by evidence that suggests more than a purely

speculative basis for granting entitlement to the requested benefits. *Tirpak v. Derwinski,* 2 Vet.App. 609 (U.S.Vet.App.1992). To buttress his claim, appellant submitted a private physician's medical report lending credence to his contentions; he also offered detailed statements concerning the circumstances under which his claimed disability was incurred, and the dates and locations of his medical treatment while in service. We hold that the claim was well grounded under section 5107(a). *Cf. Gobber v. Derwinski,* 2 Vet.App. 470 (U.S.Vet.App.1992) (audiogram that lacked authentication, except by appellant's own statement concerning its origins, constituted "new and material" evidence sufficient to trigger VA's duty to assist in reopening of claim); *Smith v. Derwinski,* 2 Vet.App. 147 (1992) (case remanded for BVA's failure to provide adequate reasons or bases for rejecting veteran's claim where, because service records were missing, positive evidence consisted principally of veteran's sworn statements and testimony).

■ It is not disputed that the VA made several efforts to obtain appellant's service medical records through the offices of the NPRC. When those efforts proved unsuccessful, however, the VA simply gave up and declared the process finished. The Board then ratified the rating board's decision to call an end to the search for corroborating evidence. We have previously acknowledged, of course, that the VA's duty to assist is not unlimited; *see Gobber,* 2 Vet.App. at 472, *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); but we have also observed that "VA regulations do not provide that service connection can only be shown through medical records, but rather allow for proof through lay evidence." *Smith,* 2 Vet.App. 147, 148; *see also Cartright v. Derwinski,* 2 Vet.App. 24 (1991).

In this case, the Board should have advised the veteran to submit alternate forms of evidence to support his contention that he suffered from and received treatment for frostbite during service. *See Garlejo v. Derwinski,* 2 Vet.App. 619, 620–21, (1992) (VA breached duty to assist veteran by neglecting to inform him that he might ask fellow soldiers to write letters in support of his claim). Indeed, the VA Adjudication Procedure Manual, Manual M21–1 (hereinafter Manual), includes special provisions for "Fire–Related Cases" at paragraph 4.06. (Similar provisions were formerly codified at paragraph 6.04e of the Manual. *See* M21–1, Part I, Change 5 (Nov. 8, 1991).) The Manual instructs VA adjudication personnel as follows: "In those cases in which records needed to resolve the claim cannot be secured from the service department ..., assist the claimant in obtaining sufficient evidence from alternate or collateral sources." Manual at ¶ 4.07a. The Manual proceeds to suggest various forms of evidence that may be considered in lieu of missing service medical records; the list includes items such as "[s]tatements from service medical personnel" and " '[b]uddy' certificates or affidavits." *Id.* at ¶ 4.07a(2)(b), (c). Here, the Board had a duty to advise appellant that, even though his service records could not be found, alternate methods of supporting the claim would be considered.

■ The Court further notes that, in the course of the administrative proceedings, appellant furnished the VA with the locations of four separate military medical facilities at which he supposedly received treatment while in service: Ft. Drum, New York (January 1952); Rome Air Force Base, New York (January 1952); Camp Edwards, Massachusetts (January 1952); and Percy Jones Army Hospital, Battle Creek, Michigan (January–April 1952). R. at 9, 28. The first records requisition form prepared by the VA, which was submitted in August 1989, refers only to two of the facilities that appellant identified, Ft. Drum and Camp Edwards. *See* Supp.R. at 1. In the other two requisition forms that were submitted prior to the Board's decision, the fields for indicating dates and places of treatment as to which information is requested are blank. The present record shows no evidence of any inquiry concerning treatment at Rome or at Battle Creek. The Secretary of Veterans Affairs (Secretary) has apparently taken the position, based on the certification of Wendy Hollingsworth, that appellant's service medical

records are unavailable. We do not question that assertion; we are aware that no record keeping system is infallible. Nevertheless, we note that neither the Board's decision nor the Secretary's pleadings in this appeal have provided the appellant with an explanation of how service records are maintained, why the search that was undertaken constitutes a reasonably exhaustive search, and why further efforts (e.g., inquiries directed to the named facilities, if they are still operational) are not justified. *See Godwin,* 1 Vet.App. at 425. Where the denial of a veteran's claim rests, in part, on the government's inability to produce records that were once in its custody, such an explanation is due. *Cf. Moore v. Derwinski,* 1 Vet.App. 401, 406 (1991) (duty to assist "particularly great in light of the unavailability of the veteran's exit examination and full Army medical records ...").

Whether or not evidence corroborating appellant's account of the 1952 episode is secured, any new decision of the Board must include an analysis of the credibility and probative value of the statements submitted by the veteran and an explanation of the Board's reasons or bases for accepting or rejecting this evidence. *Smith,* 2 Vet.App. at 148. Further, if a review of the evidence suggests a reasonable possibility that appellant's current disabilities are related to the alleged incident in service, "the BVA should consider the need for a remand of the case to the agency of original jurisdiction for a compensation examination of appellant and, in connection therewith, for a medical opinion as to whether his current disabilities are in any way related to" his service. *Witherspoon v. Derwinski,* 2 Vet.App. 4, 4 (1991) (order).

The BVA's decision of August 30, 1990, is VACATED, and the case is REMANDED for proceedings consistent with this opinion.

*It is so Ordered.*