Citation Nr: 1456927 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-21 731 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to service connection for hearing loss.

2. Entitlement to service connection for residuals of traumatic brain injury.

3. Entitlement to an increased rating for posttraumatic stress disorder (PTSD)

4. Entitlement to an increased rating for a cervical spine disability.

5. Entitlement to service connection for sleep apnea, including as secondary to PTSD.

6. Entitlement to service connection for headaches, including as secondary to a service-connected cervical spine disability. 

7. Entitlement to service connection for a bilateral knee condition, including as secondary to a service-connected bilateral ankle disability. 

8. Entitlement to service connection for a thoracolumbosacral spine condition, including as secondary to a bilateral knee condition or service-connected bilateral ankle disability.

9. Entitlement to service connection for a bilateral lower extremity condition, claimed as radiculopathy and/or neuropathy, including as secondary to a thoracolumbosacral spine condition or service-connected bilateral ankle disability.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Tracie N. Wesner, Associate Counsel


INTRODUCTION

The Veteran served on active duty training from July 1998 to November 1998, and thereafter served on active duty from February 2003 to May 2003 and December 2003 to April 2005.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from June 2011 and January 2012 rating decisions from the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska. 

The Veteran presented sworn testimony at a hearing before the undersigned Veterans Law Judge (VLJ) in January 2014. A transcript of that hearing is of record.

The issue of service connection for sleep apnea is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In January 2014, prior to the issuance of a decision in the appeal, the Veteran withdrew his appellate claims of service connection for hearing loss and residuals of traumatic brain injury, and claims for an increased rating for PTSD and a cervical spine disability.

2. The Veteran's headache condition was not shown in service and is not shown to be related to his service-connected cervical spine disability.

3. The Veteran's thoracolumbosacral spine condition was not shown in service, did not manifest to a compensable degree within one year of service, and is not shown to be related to his service-connected bilateral ankle or cervical spine disability.

4. The Veteran's bilateral lower extremity condition, claimed as radiculopathy and/or neuropathy, was not shown in service and is not shown to be related to his service-connected spine or bilateral ankle disability.

5. The Veteran's bilateral knee condition was not shown in service and is not shown to be related to his service-connected spine disability or bilateral ankle disability.




CONCLUSIONS OF LAW

1. The criteria for withdrawal of an appeal by the Veteran have been met regarding his appellate claims of service connection for hearing loss and residuals of traumatic brain injury, and claims for an increased rating for PTSD and cervical spine disability. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014).

2. The elements for entitlement to service connection for a headache condition, including as secondary to a service-connected cervical spine disability, have not been met. 38 U.S.C.A. §§ 1110, 1154, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).

3. The elements for entitlement to service connection for a thoracolumbosacral spine condition, including as secondary to a knee condition or service-connected cervical spine or bilateral ankle disability, have not been met. 38 U.S.C.A. §§ 1110, 1154, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309(a) (2014).

4. The elements for entitlement to service connection for a bilateral knee condition, including as secondary to a service-connected spine disability or bilateral ankle disability, have not been met. 38 U.S.C.A. §§ 1110, 1154, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).

5. The elements for entitlement to service connection for a bilateral lower extremity condition, claimed as radiculopathy and/or neuropathy, including as secondary to a service-connected spine disability or bilateral ankle disability, have not been met. 38 U.S.C.A. §§ 1110, 1154, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).






REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Board notes at the outset that VA has an obligation to notify claimants what information or evidence is needed in order to substantiate a claim, as well as a duty to assist claimants by making reasonable efforts to get the evidence needed. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A & 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

In this case, as detailed below, the Veteran has withdrawn his claims of service connection for hearing loss and residuals of traumatic brain injury, and claims for an increased rating for PTSD and cervical spine disability. Therefore, no discussion of VA's duties to notify and assist is necessary with respect to these claims.

As to the remaining claims on appeal, the duty to notify was satisfied by way of letters sent to the Veteran in April 2011 and July 2012 that informed him of his duty and the VA's duty for obtaining evidence, explained what evidence and information was required to substantiate his service-connection claim, and met the notification requirements set out for service connection in Dingess v. Nicholson, 19 Vet. App. 473 (2006).

VA also has a duty to assist the Veteran in the development of his claim. Relevant to the duty to assist, the Veteran's service treatment records (STRs) and post-service VA treatment records have been obtained and considered. The Board notes that in connection with a previous claim, the RO made a formal finding that certain of the Veteran's STRs were unavailable. Where a claimant's records are unavailable, VA has a "heightened" duty to assist the claimant that includes advising him that his records are unavailable, advising him to submit alternative forms of evidence to support his claim, and assisting him in obtaining this alternative evidence. Washington v. Nicholson, 19 Vet. App. 362, 370 (2005); Dixon v. Derwinski, 3 Vet.App. 261, 263 (1992). In this case, the RO advised the Veteran that certain of his STRs were unavailable and informed him of the alternative types of evidence he could submit to support his claim. See September 2005, April & May 2006 Letters. Additionally, the Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

VA's duty to assist also requires it to provide a medical examination or opinion if one is necessary to decide the claim. 38 C.F.R. § 3.159(c)(4)(i). The Veteran was provided with VA examinations in December 2011 and July 2012. The Board finds that the examinations and opinions are adequate as to the issues decided on appeal because they included a physical examination of and interview with the Veteran, and a review of the relevant records and history. Moreover, the examiner provided clear conclusions with supporting data, and reasoned medical explanations connecting the two. Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Thus, the VA met its duty to provide a medical examination or opinion pursuant to 38 C.F.R. § 3.159(c)(4)(i) in connection with this claim. 

The Veteran presented testimony in support of his claims at a hearing before the undersigned VLJ in January 2014. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who chairs a hearing fully explain the issues and suggest the submission of evidence that may have been overlooked. Here, the Veteran volunteered testimony regarding his symptoms and their onset, the treatment he has received, and how his disabilities have affected his daily life and ability to work. The hearing focused on the appropriate elements, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. Neither the Veteran nor his representative has asserted that the VLJ failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conduct of the hearing. As such, the Board may proceed to a decision. 

The Veteran has not made the RO or the Board aware of any additional pertinent evidence that needs to be obtained in order to fairly decide his claim, and has not argued that any error or deficiency in the accomplishment of the duty to notify and duty to assist has prejudiced him in the adjudication of this issue. As such, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claims, and he will not be prejudiced as a result of the Board proceeding to a decision.

II. Withdrawal of Appellate Claims

An appeal may be withdrawn by an appellant or his or her authorized representative as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204. At the January 2014 hearing before the Board, the Veteran withdrew his appeal in connection with claims of service connection for hearing loss and residuals of traumatic brain injury, and claims for an increased rating for PTSD and cervical spine disability. See Hearing Tr. at 3-4. Accordingly, the Board does not have jurisdiction to review these appellate claims, and they are dismissed.

III. Service Connection

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table). 

Service connection may also be established for certain chronic diseases, including arthritis, that are present to a compensable degree within the first post-service year. See 38 C.F.R. §§ 3.307, 3.309(a). 

Further, service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a).

Direct and Presumptive Service Connection

As an initial matter, the Board finds that there is insufficient evidence in the record to support entitlement to service connection for a headache condition, bilateral leg and knee disabilities, or a thoracolumbosacral spine disability on a direct or presumptive basis. The Veteran's STRs show that he did not complain of headaches, knee pain or leg pain. The records further show that he did not seek treatment for any of these conditions. The Veteran did mention he had back pain at a March 2005 examination, but no treatment was given and no formal diagnosis was entered. Moreover, he did not note any ongoing medical conditions at discharge, and did not complain of or seek treatment for a headache condition, bilateral leg and knee disabilities, or a thoracolumbosacral spine disability, including arthritis, for years after service. The Board further notes that during his January 2014 hearing, the Veteran contended that his headache, thoracolumbosacral spine, bilateral lower extremity radiculopathy/neuropathy and bilateral knee disabilities were all secondary to his already service-connected cervical spine or bilateral ankle disabilities. See Hearing Tr. at 18, 21, 23-24. He further conceded that he was not claiming that these conditions had their onset in or were directly related to an injury that occurred in service. Id. Consequently, the Board finds that service connection for these disabilities on a direct or presumptive basis is not warranted.


Headaches

The evidence of record shows that it is less likely than not that the Veteran's headache condition is due to, the result of or aggravated by his service-connected cervical spine disability. During the December 2011 VA examination, the Veteran described having headaches two to three times a week, affecting his temples bilaterally, not originating in the occipital region or posterior cervical region and radiating into the rest of his head. He also described specifically that the headaches tended to occur independently of symptoms or flare-ups concerning his cervical spine condition. Based on these facts, the December 2011 VA examiner opined that the Veteran's current headache disorder was not due to, the result of or aggravated by his service-connected cervical spine disability. The examiner stated that the description of his headaches provided by the Veteran indicated that they were not cervicogenic in nature, and thus not related to his cervical spine disability. According to the VA examiner, cervicogenic headaches are typically the result of flare-ups or increase in severity of symptoms of an underlying cervical spine condition including muscle spasms or strain of the cervical musculature. Cervicogenic headaches typically originate with pain in the posterior neck and occipital region. During the December 2011 VA examination, the Veteran described headaches that began in the temples and occurred independent of flare-ups and increase in severity of his cervical spine condition. See December 2011 VA Examination Report. Thus, the examiner opined that the headaches were not due to, a result of, or aggravated by this condition. The Board considers the VA examiner's opinions highly probative as they are predicated upon a thorough clinical examination and evidentiary review and are supported by a detailed rationale. 

Moreover, the examiner's opinion is uncontroverted by any other competent evidence of record. Although the Veteran argues that his headaches are related to his cervical spine disability, he is not competent to give a medical opinion as to the etiology of headaches, which requires clinical expertise. See Jandreau v Nicholson, 492 F.3d 1372, 1377, n. 4 (Fed. Cir. 2007).

At his hearing, the Veteran testified that his headaches are located in the temple region bilaterally, occur after he experiences an increase in tension or pain in his neck or discomfort in his jaw, and are alleviated when his neck pain is reduced. See Hearing Tr. at 18-19. In this regard, the Board affords little probative value to the Veteran's post-VA examination statements that his headaches occur when he feels more tension or pain in his neck or jaw, because it is inconsistent with his prior statements to the VA examiner. 

In light of the above analysis, the Board finds that entitlement to service connection for headaches is not supported by the competent evidence of record, and thus is not warranted.

Bilateral Knee, Thoracolumbar Spine, and Bilateral Lower Extremity Conditions

The Veteran testified that as a result of his bilateral ankle disabilities, he has had to adjust how he walks, which has caused his knee, back and leg problems. See Hearing Tr. at 21-24. He described having pain in his low back and knees, as well as shooting pains in his legs. See id. at 13-14.

The evidence of record demonstrates that it is less likely than not that the Veteran's thoracolumbosacral spine, bilateral knee and bilateral leg conditions are due to, a result of or aggravated by his service-connected bilateral ankle condition. The December 2011 VA examination showed no evidence of lower extremity neuropathy or peripheral nerve condition. See December 2011 VA Examination Report. The Veteran did not report pain, paresthesia, dysesthesia or numbness in his lower extremities. He exhibited normal strength and no muscle atrophy, and his reflex and sensory exams were normal. Based on the lack of symptoms and findings during the exam, the VA examiner noted no paralysis of the Veteran's lower extremity nerves. See id.

The December 2011 VA examiner further found that the Veteran did not describe or demonstrate any significant change in biomechanics, gait alteration, or load-bearing such as to result in any undue burden affecting the lumbar spine, thoracic spine, or the knees bilaterally. An examination of the Veteran's footwear did not demonstrate any unusual or abnormal treat wear to indicate abnormal weight-bearing. See id. Thus, based on a physical examination and interview with the Veteran, the examiner opined that there was no relation between these claimed conditions and his service-connected ankle condition. The findings and opinions of the December 2011 VA examiner are highly probative because they are based on an accurate understanding of the Veteran's history and are adequately articulated and explained. 

The Board notes the Veteran's testimony that he has had to adjust the way that he walks to compensate for his ankles, that he has noticed abnormal wear patterns on the bottoms of his shoes, and that he has experienced shooting pains in his legs. Although he is competent to give such testimony, he is not competent to diagnose his leg pain or provide an opinion concerning a causal link between his reported symptoms and his current service-connected disabilities. See Jandreau, 492 F.3d at 1377. 

The Board acknowledges that there is a notation in the Veteran's VA medical records that he complains of left knee pain that is "likely due to compensating for right ankle pain, which is more severe than left." See August 2010 VA Medical Record. However, the Board finds this opinion less probative on the nexus issue than those provided by the VA examiner because it is not supported by any reasoning or factual analysis. See Nieves-Rodriguez, 22 Vet. App. at 304. 

Finally, there is no evidence in the record suggesting that the Veteran's thoracolumbosacral spine, bilateral knee and bilateral leg conditions are due to, a result of or aggravated by his service-connected cervical spine condition, nor does the Veteran make such a contention. 

In light of the above analysis, the Board finds that the evidence preponderates against a finding of entitlement to service connection for thoracolumbosacral spine, bilateral knee and/or bilateral leg conditions as secondary to a service-connected disability. 


ORDER

The appeal regarding the appellate claims of service connection for hearing loss and residuals of traumatic brain injury, and claims for an increased rating for PTSD and cervical spine disability, is dismissed.

Service connection for headaches, including as secondary to a service-connected cervical spine disability, is denied. 

Service connection for a thoracolumbosacral spine condition, including as secondary to a knee condition or service-connected spine or bilateral ankle disability, is denied. 

Service connection for a bilateral knee condition, including as secondary to a service-connected spine or bilateral ankle disability, is denied.

Service connection for a bilateral lower extremity condition, claimed as radiculopathy and/or neuropathy, including as secondary to a service-connected spine or bilateral ankle disability, is denied.




REMAND

The Veteran contends that his sleep apnea had its onset in service and has been chronic and recurrent since that time. In support of his claim, he submitted lay statements from a former service member and his wife. The service member, a former tent-mate of the Veteran while they were deployed, stated that he observed the Veteran snoring and appear to stop breathing while sleeping, and that he seemed to have trouble sleeping and would appear irritable. See May 2012 Statement of D.P. The Veteran's wife provided a statement that, shortly after he separated from service, she observed his snoring and gasping for air while sleeping. She also stated that he appeared tired and irritable in the mornings after a full night's sleep. See May 2012 Statement of T.O.

The Veteran was provided a VA examination in connection with his sleep apnea in July 2012. The VA examiner addressed the reported symptom of snoring while in service, opining that the sole symptom of snoring did not support the conclusion that the Veteran had sleep apnea during service. The VA examiner did not address the other symptoms reported by the Veteran's former tent-mate and wife. As such, this issue should be remanded for an addendum opinion addressing this evidence. 

Alternatively, the Veteran seeks service connection for sleep apnea as secondary to his service-connected PTSD. In support of this theory of entitlement, the Veteran submitted evidence from his treating VA provider concerning a medical study, which observed that sleep apnea was found at a greater rate in those people diagnosed with mood disorders such as PTSD, psychosis and anxiety. See November 2011 Letter. This evidence was not discussed in the July 2012 VA examination report. On remand, the VA examiner should specifically consider and comment on the evidence submitted by the Veteran concerning this study.

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding VA and private treatment records concerning the Veteran's treatment for sleep apnea. 

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed his in-service and post-service sleep apnea symptoms. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. Then obtain an addendum opinion concerning the onset and etiology of the Veteran's current sleep apnea. The claims folder should be reviewed by the examiner. 

The VA examiner should specifically address the following:

(a) Is it at least as likely as not that the Veteran's sleep apnea is related to or had its onset in service? 

(b) Is it at least as likely as not that the Veteran's sleep apnea is due to, a result of or aggravated by his service-connected PTSD?

In answering these questions, the examiner should specifically consider and discuss the following:

(a) the lay statements provided by the Veteran's wife and former tent-mate, received in May 2012, concerning his observable symptoms during service and soon after separation from service; and

(b) the November 2011 Letter provided by the Veteran's treating VA provider and the study discussed in that letter.

A complete rationale should be provided for any opinion stated. 

The examiner is advised that the term "aggravation" is defined for this purpose as a chronic worsening of the underlying condition beyond its natural progression, versus a temporary flare-up of symptoms. 

If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of disability (i.e., a baseline) before the onset of the aggravation. 

If the requested opinion(s) cannot be rendered without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

4. Then readjudicate the matter on appeal. If any of the benefits sought on appeal remain denied, furnish the Veteran and his representative with a Supplemental Statement of the Case and afford them the opportunity to respond before the file is returned to the Board for further consideration.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs