Citation Nr: 1536762 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 12-30 672 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
 in Boston, Massachusetts


THE ISSUES

1. Entitlement to service connection for residuals of an unspecified neurological disability, other than traumatic brain injury (TBI), to include as secondary to service-connected TBI with headaches.

2. Entitlement to service connection for sleep apnea, to include as secondary to service-connected TBI with headaches.

3. Entitlement to service connection for a back disability, to include as secondary to service-connected TBI with headaches.

4. Entitlement to service connection for pain of both upper and lower extremities, to include fibromyalgia, and to include as secondary to service-connected TBI with headaches. 




REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

Y. Venters, Associate Counsel


INTRODUCTION


Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty for training from July 1957 to January 1958. He also has unverified National Guard service.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the RO.

The Veteran testified before the undersigned Veterans Law Judge (VLJ) at a Board hearing in August 2013. The transcript of the hearing is associated with the file. 

The Board notes that the issues on appeal were last before the Board in January 2014 when the issues were remanded for additional evidentiary development. 

The Board further notes that the claim for service connection for an unspecified neurological condition, to include TBI, was also previously before the Board and remanded in January 2014. Subsequently, in an April 2015 rating decision, the RO granted service connection for TBI with headaches. Thus, as this represents a full grant of the benefits sought with respect to this issue, it is no longer in appellate status. Seri v. Nicholson, 21 Vet. App. 441, 447 (2007) (the grant of a claim of service connection constitutes an award of full benefits sought on an appeal of the denial of a service connection claim).

The Board acknowledges that the appeal includes a broad statement of residuals of concussion. As characterized by the title page, we conclude that the issue is other residuals of a neurological disorder since service connection has already been granted for TBI with headaches.


FINDINGS OF FACT

1. Residuals of a neurological disorder, other than TBI, did not manifest in service or within one year after separation from service and are unrelated to service.

2. Residuals of a neurological disorder were not caused or aggravated by service-connected TBI with headaches.

3. Sleep apnea was not manifest in service and is unrelated to service.

4. Sleep apnea was not caused or aggravated by service-connected TBI with headaches.

5. A back disability, to include thoracolumbar strain and lumbar osteopenia was not manifest in service and is unrelated to service. Imaging studies of the spine do not document arthritis. 

6. A back disability, to include thoracolumbar strain and lumbar osteopenia was not caused or aggravated by service-connected TBI with headaches.

7. Fibromyalgia was not manifest in service and is unrelated to service.

8. Fibromyalgia was not caused or aggravated by service-connected TBI with headaches. 


CONCLUSIONS OF LAW

1. Residuals of a neurological disorder, other than TBI, were not incurred in or aggravated by service, and an organic disease of the nervous system may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

2. Residuals of a neurological disorder were not proximately due to, the result of, or aggravated by a service connected disease or injury. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.310 (2014).

3. Sleep apnea was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014).

4. Sleep apnea was not proximately due to, the result of, or aggravated by a service connected disease or injury. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.310 (2014).

5. A back disorder, to include thoracolumbar strain and lumbar osteopenia, was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014).

6. A back disorder, to include thoracolumbar strain and lumbar osteopenia was not proximately due to, the result of, or aggravated by a service connected disease or injury. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.310 (2014).

7. Fibromyalgia was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014).


8. Fibromyalgia was not proximately due to, the result of, or aggravated by a service connected disease or injury. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. § 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Board has given consideration to the Veterans Claims Assistance Act of 2000 (VCAA). The VCAA includes an enhanced duty on the part of VA to notify a claimant as to the information and evidence necessary to substantiate a claim for VA benefits. The VCAA also defines the obligations of VA with respect to its statutory duty to assist a claimant in the development of his claim. See 38 U.S.C.A. §§ 5103, 5103A (West 2014).

In compliance with VA duty to notify, the RO provided pre-adjudication VCAA notice letters in June and November 2011 regarding the Veteran's claims. The Veteran was notified of the evidence needed to substantiate the claims, as well as what information and evidence must be submitted by the Veteran, what information and evidence would be obtained by VA, and the provisions for disability ratings and for the effective date of the claim. Thus, the duty to notify the Veteran was met.

The VCAA also requires VA to make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

Here, VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the Veteran's claim. VA medical records, private medical records, and lay statements have been associated with the record and have been reviewed by both the AOJ and the Board in connection with this claim. In addition, the Veteran was afforded VA examinations regarding his claims. These examinations contain findings necessary for rating purposes and are considered adequate, as they reflect a pertinent medical history, review of the documented medical history, clinical findings, a diagnosis, and opinions supported by medical rationale. 

The Veteran's service treatment records are not available. In cases where a veteran's service treatment records have been lost or destroyed, VA has a heightened duty to assist the veteran in development of his claim. See Dixon v. Derwinski, 3 Vet. App. 261 (1992). The RO has determined that further attempts to obtain the Veteran's service treatment records will not be successful.

In compliance with the Board's remand in January 2014, the Veteran was afforded VA examinations for his claimed disabilities. After the examinations, VA examiners provided medical opinions that addressed the questions regarding the claimed disabilities listed in the remand. The AOJ also followed the instructions provided in an attempt to verify the Veteran's exact dates of National Guard service and obtaining any outstanding treatment records, to include VA medical records and Social Security Administration records. The VA indicated that all efforts to obtain the needed information have been exhausted, and based on these facts, they determined that further attempts to obtain the records would be unsuccessful. Thus VA has complied with the January 2014 remand instructions. Stegall v. West, 11 Vet. App. 268 (1998).

The Board also notes that in August 2013, the Veteran was afforded a hearing conducted before the undersigned VLJ. At the start of the hearing, the VLJ clarified the issues on appeal. During the hearing, the Veteran set forth his arguments and contentions. These actions supplement the VCAA and comply with 38 C.F.R. § 3.103.

In sum, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. 38 C.F.R. § 3.159 (2014).




Analysis

Veterans are entitled to compensation from the DVA if they develop a disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C.A. § 1110 (wartime service), 1131 (peacetime service). To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed.Cir. 2004).

For a Veteran who served 90 days or more of active service after December 31, 1946, there is a presumption of service connection for organic disease of the nervous system, if the disability is manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309. 

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b); See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic as per 38 C.F.R. § 3.309(a)). Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection is also warranted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is warranted for any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease. 38 C.F.R. § 3.310(b).

Under 38 C.F.R. § 3.310(d), in a veteran who has a service-connected TBI, the following shall be held to be the proximate result of the service-connected TBI, in the absence of clear evidence to the contrary: (i) Parkinsonism, including Parkinson's disease, following moderate or severe TBI; (ii) Unprovoked seizures following moderate or severe TBI; (iii) Dementias of the following types: presenile dementia of the Alzheimer type, frontotemporal dementia, and dementia with Lewy bodies, if manifest within 15 years following moderate or severe TBI; (iv) Depression if manifest within 3 years of moderate or severe TBI, or within 12 months of mild TBI; or (v) Diseases of hormone deficiency that result from hypothalamo-pituitary changes if manifest within 12 months of moderate or severe TBI. 

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). 

This includes weighing the credibility and probative value of lay evidence against the remaining evidence of record. See King v. Shinseki, 700 F.3d 1339 (Fed. Cir. 2012); Kahana, 24 Vet. App. at 433-34. A lay person is competent to report on the onset and continuity of his symptomatology. Kahana, 24 Vet. App. at 438. Moreover, lay evidence may be competent and sufficient evidence of a diagnosis or nexus if (1) the particular condition at issue is the type of condition that is within the competence or common knowledge of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Kahana, 24 Vet. App. at 433, n.4. The Board must determine on a case-by-case basis whether a particular condition is the type of condition that is within the competence of a lay person. See Jandreau, 492 F.3d 1367 -77; see also Kahana, 24 Vet. App. at 433 n.4. 

A Veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. See Fagan v. Shinseki, 573 F.3d 1282, 1287-88 (2009); see also Walker, 708 F.3d 1331, 1334. In making its ultimate determination, the Board must give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. See Fagan, 573 F.3d at 1287 (quoting 38 U.S.C. § 5107(b)).

The Veteran seeks service connection for residuals of an unspecified neurological disorder, sleep apnea, a back disability, and pain of both upper and lower extremities. As an initial matter, the Board notes that the Veteran does not allege that the disabilities are the result of participation in combat with the enemy.

Specifically, the Veteran contends that the disabilities are the result of a motor vehicle accident during service. Therefore, the combat provisions of 38 U.S.C.A. § 1154(b) are not applicable for this claim.

The Veteran's service treatment records are not available. A newspaper article received in November 2012 that appeared in the Newark Sunday News on September 8, 1957 indicates that seven soldiers, including the Veteran, were injured in a motor vehicle accident "yesterday." The article states that none of the Veteran's sustained serious injuries and the injuries to the Veteran were "contusions of the forehead, head and facial lacerations." 

Based on the lack of the Veteran's service treatment records and the Veteran's credible statements a long with the newspaper article, the Board finds that the Veteran was involved in a motor vehicle accident during service. 

Private treatment records from the 1980's and 1990's show that the Veteran reported that at the age of 19, he was hospitalized for a head injury in a motor vehicle accident, but he stated that he did not lose consciousness. An examiner diagnosed a possible tic disorder and Tourette's syndrome demonstrated by involuntary jerking movements and the sudden sensation of an urge to shout something or a sudden moan that he cannot control. The examiners found that multiple EEGs and MRs ruled out a seizure disorder. The examiners were unable to determine the etiology of the possible tic disorder and Tourette's syndrome. 

The neuropsychological testing reports from the 1980's and 1990's show complaints of depression, anxiety, difficulty with concentration, and memory. Examinations included a negative head CT and multiple EEG's for abnormal movements. The 1996 neuropsychological evaluation states that there were no cognitive changes following the accident and that full evaluations were initiated 30 years following this accident for multiple complaints including memory loss. The 1996 neuropsychological examiner emphasized anxiety and depression as consistent influencing factors as well as a tendency towards somatization. The examiner recommended that the Veteran continue with his depression and anxiety treatment. 

Other private treatment records dated late 1980's and the 1990's show diagnoses of sleep apnea, fibromyalgia, and a lumbar spine disability. The records do not provide an etiology for the disabilities. 

Medical literature pertaining to the onset and clinical course of head injuries and sleep disorders was submitted in support of the claim. The Board notes the document was reviewed. 

Buddy statements from the Veteran's wife and sister which document symptoms shown by the Veteran over a period of years were also reviewed. 

The Veteran was afforded VA examinations in August 2011 for his back and joints by the same examiner. On examination of the back, the examiner diagnosed low back pain. The Veteran reported that he could not remember exactly when he first had back pain but thinks it might have been while he was on active duty as an ambulance driver. The examiner noted that there is no specific mention of any event in the Veteran's service medical records. He reported that imaging studies of the spine did not document arthritis. The examiner stated that during the examination the Veteran demonstrated verbal "tics." He noted that the body "tics" was sudden motions of his whole body, mostly in the upper extremities that would cause him to shift his position but not fall out of his chair. He indicated that the verbal "tics" were sudden brief loud grunting.

On examination of the joints, the examiner diagnosed knee pain and shoulder pain. In regards to the knees, the Veteran stated that he was not sure when exactly the knee began to bother him. In regards to the shoulders, the Veteran and his wife could not remember exactly when the Veteran began to develop bilateral shoulder pain but asserted that it was prior to 1990. The Veteran asserted that his shoulder pain may arise from his "tics." The examiner reported that imaging studies of the knee and shoulder do not document arthritis. The examiner noted that X-ray examinations of both knees including standing show no sign of joint space collapse, osteoarthrosis or old or malunited fractures. 

The examiner opined that unless the anxiety disorder and/or the "tics" which he believes are directly related to his anxiety disorder are found to be service connected then all of his back, knee and shoulder disabilities must be found to be not service connected also. 

In August 2011, a different VA examiner evaluated the Veteran's sleep apnea. On examination, the examiner diagnosed obstructive sleep apnea and REM sleep behavior disorder. The examiner noted that sleep apnea was diagnosed in 1996. The examiner did not provide an opinion for the etiology of sleep apnea and REM sleep behavior disorder. 

The Veteran was also afforded a VA examination in August 2011 regarding neurological disorders. The examiner reviewed records provided by the Veteran, to include private treatment records noted above. The examiner noted the motor vehicle accident during service. The examiner stated that the examination was difficult because the Veteran had an essentially positive review of systems to all questions asked. During the examination, the Veteran reported that he lost consciousness for about 30 minutes and was hospitalized for several days. The examiner stated that when reviewing the records provided by the Veteran there is a different history indicating there was no loss of consciousness and the diagnosis given was concussion. The examiner noted that no surgical intervention was undertaken following the head trauma. The examiner asserted that the records show that the Veteran had a history of involuntary movements. The examiner stated that seizures have been ruled out with various EEGs. The examiner indicated that the Veteran does have involuntary movements that appear to be more like a tic disorder. 

The examiner concluded that the Veteran complains of memory and concentration disorder over the last 40 to 50 years with multiple workups that have seemed to emphasize anxiety, depression, personality disorder (somatization) rather than any primary neurological disorder. The examiner stated that the Veteran certainly has evidence today of somatization with multiple complaints in any system that was questioned about. The examiner opined that the current evaluation is best explained by chronic psychiatric disorder characterized by anxiety, depression and somatization. The examiner asserted that the Veteran does have evidence of a tic disorder on examination. He stated that neither the anxiety, depression, personality disorder, nor tic disorder can be explained by the relatively minor head trauma suffered while the Veteran was in service. 

A September 2011 letter from the Veteran's massage therapists indicates that he was treated for chronic pain in his head, neck back, arms, hands, legs and feet. She stated that this appears to be a long standing issue that came from a trauma to the neck. She noted that the Veteran disclosed that he was in a car accident while he was in service and was never treated for muscle spasm or whiplash. She opined that the long standing neck trauma and whiplash have affected other areas of the Veteran's body, as the body has attempted to reach homeostasis and find balance. She indicated that the Veteran has forward head posture which affects not only the neck and head, but the entire spine, the lumbar and sacral areas, the scapula bilaterally, the entire erector spinae bilaterally, the oxipital ridge which is severely tight and causes constricted blood flow and headaches in addition to limited range of motion. 

A September 2012 letter from Dr. L. F. indicates that the Veteran's symptoms such as memory problems, vocal tics, depression, anxiety, sleep apnea, and generalized pain may possibly be linked to the motor vehicle accident in service. 

A September 2012 letter from Dr. A. A. indicates that the Veteran's nocturnal symptoms such as mild to moderate obstructive sleep apnea, as well as hypnogogic hallucinations, sleep talking and dream enactment, and myoclonic seizures are possibly related to his motor vehicle accident in service. 

In August 2013 the Veteran and his wife provided testimony in support of the Veteran's claims. In regards to residuals of a neurological disorder, the Veteran stated that since service he has had symptoms such as headaches, nausea, dizziness and fatigue. He stated that he never felt right after the motor vehicle accident. He indicated that he did not seek treatment for these symptoms until many years after service, around 1988. The Veteran and his wife asserted that he has been diagnosed with a tic disorder, Tourette's syndrome, and temporal lobe epilepsy. The Veteran and his wife testified that several doctors have stated that his residuals of a neurological disorder are related to the in-service motor vehicle accident. 

In regard to sleep apnea, the Veteran testified that he started having sleep problems after the in-service motor vehicle accident. He stated that he remembers having tremendous fatigue during service and he needed a lot of sleep. He later stated that he actually had that exhaustion throughout his life. He asserted that it has gotten a little better with his sleep machine. He indicated that he was diagnosed with sleep apnea around 1996. The Veteran and his wife testified that they were told that his sleep apnea is related to the in-service motor vehicle accident. 

In regards to his back, the Veteran stated that he has had back problems since the in-service motor vehicle accident. He testified that he seeks treatment from a chiropractor and takes over the counter medicine. He does not recall a doctor relating his back disability to the motor vehicle accident during service. 

In regards to upper and lower extremity pain, the Veteran indicated that he believes the pain is due to the motor vehicle accident in service. He asserted that he was diagnosed with fibromyalgia. The Veteran and his wife testified that doctors have found that his fibromyalgia is related to the in-service motor vehicle accident. 

During the hearing, the Veteran's wife indicated that she has known the Veteran since 1965. She testified that around 1965 she did not see the Veteran demonstrating symptoms of Tourette's or tic movement. She stated that she does not recall recognizing that he had problems with his upper and lower extremities. She also asserted that she does not recall him having symptoms of sleep apnea in 1965. 

The Veteran was afforded VA examinations in March 2014. The examiners diagnosed obstructive sleep apnea, thoracolumbar strain, lumbar osteopenia fibromyalgia, and Tourette's syndrome/vocal tics. A January 2015 deferred rating decision noted that in providing their opinions, the examiners did not consider the conceded in-service motor vehicle accident. Thus, the opinions were found to be inadequate and an addendum opinion was ordered.

Subsequently, a September 2014 letter from Dr. A. A. was submitted. In the letter the physician asserts that the Veteran was in a serious motor vehicle accident during service and sustained loss of consciousness and a concussion. The physician provides a medical opinion that the Veteran's closed head injury from the motor vehicle accident during service was a likely underlying cause of his neurological symptoms and deficits, such as Tourette's syndrome, sleep associated hallucinations, significant short term memory deficits, fatigue, REM behavior disorder, and resting tremor.

An addendum opinion by a VA physician was provided in February 2015. The physician noted that it is acknowledged that the Veteran has a TBI diagnosis from 1958. Regarding sleep apnea, fibromyalgia, and thoracolumbar strain and lumbar osteopenia, the examiner opined that the disabilities are less likely than not incurred in or caused by the claimed in-service injury. 

Regarding sleep apnea, he noted that obstructive sleep apnea would be caused by narrowing of the upper airway during sleep due to anatomic defects that are either congenital or acquired. He stated that it would not be associated with a head injury. He explained that while central sleep apnea or hypersomnias of central origin may be associated with head injury, the Veteran's sleep study testing is not consistent with such as diagnosis. The examiner determined that it is difficult to associate obstructive sleep apnea with a motor vehicle head injury. 

Regarding thoracolumbar strain and lumbar osteopenia, the examiner noted that the disabilities would not be caused by an injury to the head based on anatomic and physiologic considerations. He explained that a strain is a biomechanical condition, associated with injury to the affected area while osteopenia is a physiologic/endocrine condition not associated with head injury. The examiner determined that it is difficult to associate thoracolumbar strain and lumbar osteopenia with a motor vehicle head injury. 

Regarding fibromyalgia, the examiner noted that the disability has no known causes or etiologies. He stated while it can be diagnosed, it is never known with certainty what the cause is. He asserted that suspected causes include genetic, infectious, emotional trauma and physical trauma. He determined that it is difficult to associate fibromyalgia with a motor vehicle head injury. 

Concerning neurological disorders, the examiner indicated that neuropsychology testing in 1996 revealed the Veteran's statement of no loss of consciousness nor cognitive changes at the time of the accident. The examiner stated that this established medical record is indicative of mild TBI at best. The examiner addressed the September 2014 letter from Dr. A. A. He asserted that the opinion provided by the physician is best viewed as speculative as the reporting physician has no access to claims file records and specifically not the neuropsychologic testing reported above that belies the seriousness of the accepted motor vehicle accident. The examiner opined that although the Veteran has conceded TBI, it is less likely than not that contended residuals of a neurologic disorder are related to the TBI. He explained that there is no confirmed diagnosis of seizures. Further, he stated that it is exceedingly rare for "tic's" to develop as a consequence of TBI (i.e. less than 50 percent). He also agreed with the March 2014 VA examiner's opinion which stated that the Veteran's complaints of memory difficulty are best explained by his anxiety and depression.

Direct Service Connection 

After a careful review of the record, the Board has determined that service connection for residuals of a neurological disorder, sleep apnea, a back disability, to include thoracolumbar strain and lumbar osteopenia, and fibromyalgia is not warranted on a direct basis. Here, the Board finds that the weight of the more probative evidence of record indicates that residuals of a neurological disorder, sleep apnea, thoracolumbar strain and lumbar osteopenia, and fibromyalgia are not related to service, including the in-service motor vehicle accident.

As stated above, the Veteran's service treatment records are not available for review. A newspaper article dated in September 1957 shows that the Veteran was injured in a motor vehicle accident during service. The article states that the Veteran did not sustain serious injuries and the injuries to the Veteran were "contusions of the forehead, head and facial lacerations." Post-service evidence is devoid of a showing of complaints and/or treatment related to residuals of a neurological disorder, a back disability, sleep apnea, and fibromyalgia following active service until years thereafter. The Veteran stated that he did not seek treatment for his disabilities for many years after service, around 1988. Further, his wife stated that she did not see manifestations of his claimed disabilities when they were together in 1965. 

The Board finds that the contemporaneous evidence in the newspaper article indicating a lack of serious injury along with the wife's statement that she did not see manifestation in 1965, as well as some of the Veteran's statements indicating that he did not lose consciousness at the time of the accident, are of greater probative weight than the later statements of the Veteran indicating that he had significant symptoms since service, which were made years later during an appeal from the denial of compensation benefits. See Pond v. West, 12 Vet. App. 341, 345 (1999) (interest may affect the credibility of testimony).

Moreover, in considering the medical opinions provided by the VA examiners and the private physicians, including the massage therapists, the Board finds that the VA examiner's negative opinions have greater probative value than the private physicians' positive opinions. The Board notes that the probative value of a medical opinion primarily comes from its reasoning. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

In this case, the most thoroughly reasoned opinion is that of the February 2015 VA examiner who thoroughly considered the documented in-service motor vehicle accident, post-service medical findings, and the Veteran's history. After consideration of the pertinent facts, he applied known medical principles to explain his reasoning as to why there was a negative link between service, including the in-service motor vehicle accident and contended residuals of a neurological disorder, sleep apnea, thoracolumbar strain and lumbar osteopenia, and fibromyalgia. In rendering his opinion, he highlighted the medical principles he relied upon and the facts significant to support his conclusion. He also provided a medical explanation of what are considered likely etiologies of the Veteran's current disabilities. The Board finds that this opinion is consistent with the other medical evidence of record and assigns it high probative value. 

The Board acknowledges that the Veteran has provided private medical opinions expressing residuals of a neurological disorder, sleep apnea, and generalized pain are possibly related to his in-service motor vehicle accident. The Veteran and his wife also testified that medical doctors related his disabilities to the in-service motor vehicle accident. 

The Board notes that the private examiners, including the massage therapists, did not explain the reasons for their conclusions, and their opinions were not based on the relevant information in the evidence of record, including the Veteran's statements that he did not lose consciousness at the time of the accident and other evidence indicating the accident was not serious. However, being that the opinions are of trained professionals and were based on their examination findings, the opinions are entitled to some probative weight. 

As for the Veteran and his wife's statements, the Board notes that while the Veteran and his wife are competent to report what his doctor told them, they did not advance any reasoning for the conclusion that was reached. At best, the Veteran and his wife have advanced conclusory statements. We conclude that this type of lay/medical evidence may be competent, but without factual foundation, there is little probative value. This type of evidence is far less probative and less credible than the reasoned opinions of the VA examiners. 

Therefore, given the absence of pathology in proximity to service and the absence of competent evidence linking the remote onset of residuals of a neurological disorder, a back disability, to include thoracolumbar strain and lumbar osteopenia, sleep apnea, and fibromyalgia to service, we conclude that the disabilities were not incurred in or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. In addition, the record also establishes that residuals of a neurological disorder, other than TBI, were not "noted" during service and the Veteran did not have characteristic manifestations sufficient to identify an organic disease of the nervous system. Further, there is no proof of characteristic manifestations sufficient to identify the disease entity within one year of separation. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.303(b), 3.307, 3.309. Thus, the organic disease of the nervous system is not presumed to have been incurred in service. 

In addition, the Board notes that REM sleep behavior disorder has been identified. Although the Veteran has not claimed the disorder to be connected to service, the Board notes that there is no evidence linking the disorder to service or to the service-connected TBI. 

Secondary Service Connection

Considering the facts under the theory of secondary service connection, the Board finds that the most probative evidence of record weighs against the Veteran's claims. Here, the Board finds that the weight of the more probative evidence of record indicates that the contended residuals of a neurological disorder, back disability, to include thoracolumbar strain and lumbar osteopenia, sleep apnea, and fibromyalgia are not caused by or aggravated by service-connected TBI with headaches. 

In regards to residuals of a neurological disorder, as noted above, the evidence has established that the Veteran suffered from a closed head injury during service that resulted in mild TBI. The Veteran is service-connected for TBI with headaches. Therefore, the Board has specifically considered 38 C.F.R. § 3.310(d). 

Since certain mental health disorders may fall under the penumbra of neuropsychiatric disease, we shall address the psychiatric disorder and the claimed seizure disorder, particularly in light 3.310(d). 

The Board notes that a private physician diagnosed myoclonic seizures. Moreover, the Veteran and his wife stated that a doctor diagnosed temporal lobe epilepsy. The Board notes that even if we assume there is a diagnosis of some type of seizure disorder, the more objective testing is inconsistent with a seizure disorder. The medical records, including the initial private treatment records from the 1980's and 1990's and the VA examinations note that seizures have not been diagnosed. Furthermore, the claimed seizure disorder has not been witnessed or verified by a physician. 38 C.F.R. § 4.121. Here, the more probative evidence establishes that he does not have a seizure disorder/epilepsy. 

Furthermore, in regards to residuals of a neurological disorder, the VA examiners and neuropsychological private treatment records note that the Veteran's depression, memory loss, impaired concentration, and anxiety are attributable to his psychiatric disorder not his neurological disorder. The Board also notes that there is no evidence that depression manifest within 12 months of his mild TBI. 38 C.F.R. § 3.310(d). 

Again, the Board finds that the February 2015 VA examiner's negative opinion has greater probative value than the positive private physicians' opinions and the lay statements of the Veteran and his wife for the same reasons as stated above. The February 2015 VA examiner, after consideration of the pertinent facts, applied known medical principles to explain his reasoning as to why there was a negative association, to include causation or aggravation, of the claimed residuals of a neurological disorder; sleep apnea; thoracolumbar strain and lumbar osteopenia; and fibromyalgia as due to his TBI with headaches. 

In sum, the Board finds that the preponderance of the evidence indicates that the Veteran did not have residuals of a neurological disorder, other than TBI, a back disability, to include thoracolumbar strain and lumbar osteopenia, sleep apnea, and/or fibromyalgia in service or within one year of service (organic disease of the nervous system) and the weight of the competent and probative evidence shows the Veteran's disabilities are not related to a service-connected disease or injury. Accordingly, service connection for residuals of a neurological disorder, other than TBI, thoracolumbar strain and lumbar osteopenia, sleep apnea, and fibromyalgia is not warranted. 


ORDER

Service connection for residuals of a neurological condition, other than TBI, to include as secondary to service-connected TBI with headaches is denied.

Service connection for sleep apnea, to include as secondary to service-connected TBI with headaches is denied.

Service connection for a back disability, to include as secondary to service-connected TBI with headaches is denied

Service connection for pain of both upper and lower extremities, to include fibromyalgia, and to include as secondary to service-connected TBI with headaches is denied.


______________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs