http://www.va.gov/vetapp16/Files3/1626415.txt

Citation Nr: 1626415 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 12-25 997 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia

THE ISSUE

Entitlement to service connection for residuals of a neck injury, to include degenerative disc disease with cervical spondylosis.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

T. Azizi-Barcelo, Counsel

INTRODUCTION

The Veteran served on active duty from April 1956 to April 1958.

This matter comes before the Board of Veterans' Appeals (Board) from a September 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.

In August 2015, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge. A transcript of the proceeding is associated with the electronic claims file.

The appeal was remanded in December 2015 for additional development, which has been completed. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

An in-service neck injury resolved without residual disability; the current chronic cervical spine disability was not incurred in service.

CONCLUSION OF LAW

The criteria for service connection for residuals of a neck injury, to include degenerative disc disease with cervical spondylosis, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duty to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). In this case, the Veteran was initially provided with a pre-adjudicatory VCAA notice letter in January 2010. The letter informed the Veteran of the evidence necessary to establish service connection, of how VA would assist him in developing his claim, and his and VA's obligations in providing such evidence for consideration. Thereafter, the VA sent a second VCAA notice letter in March 2010 providing more detailed assistance to the Veteran following a finding that the service treatment records were unavailable, most likely lost in the St. Louis fire of 1973. The claim was last readjudicated in April 2016. 

Concerning the duty to assist, the Veteran' service treatment records are unavailable and presumed lost in a fire at the National Personnel Records Center (NPRC) in St. Louis in July 1973. In cases where service treatment records are unavailable, VA has a "heightened" duty to assist the claimant by advising him or her to submit alternative forms of evidence supporting the claim and assisting him or her in obtaining this alternative evidence. Washington v. Nicholson, 19 Vet.App. 362, 370 (2005); Dixon v.. Derwinski, 3 Vet.App. 261, 263 (1992). Further, in cases where a claimant's records have been lost or destroyed, VA has a "heightened" duty to explain its findings and conclusions and to carefully consider the benefit of the doubt rule. O'Hare v. Derwinski, 1 Vet.App. 365, 367 (1991). Here, the Board has carefully considered the Veteran's statements in support of claim and his testimony provided at the Travel Board hearing. Post-service treatment records, to include VA treatment records and private treatment records have been associated with the claims file. Additionally, VA medical examination and opinion reports were obtained. 

Based on a review of the record, the Board finds that there is no indication that any additional evidence relevant to the issue to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Moreover, the Agency of Original Jurisdiction (AOJ) has substantially complied with the previous remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the issues on appeal.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2014) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Moreover, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

The Board has reviewed all the evidence in the record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran alleges that he has a current disability of the neck that was caused by an injury in service when he was pushed into an open locker and hit his head and neck prior to being hospitalized. Because the Veteran's service treatment records are unavailable, VA has a heightened duty to consider his lay statements and other evidence of record submitted in support of his claim.

The Veteran went to great lengths to attempt to provide evidence that the assault, in fact, occurred given the unavailability of his service treatment records. The Veteran went so far as to attempt to contact the hospital where he stated he was treated in Germany and to contact other members of the 984 Engineering Unit, to include an individual who allegedly witnessed the assault. The Board is willing to believe that the Veteran sustained an injury in service. 

A private treatment record in April 1987, noted complaints of neck pain. An August 1993 MRI of the cervical spine revealed degenerative disease of C4 through C6. A September 1997 cervical spine MRI showed far right lateral disc herniation at the L4-5 level. There were mild degenerative disc changes. No evidence of significant lumbar spinal stenosis was noted.

A July 2004 MRI of the cervical spine followed a complaint of cervical radiculopathy. There was a central disc herniation at C3-4 slightly eccentric to the right. It was noted to be moderate in size and was compressing the underlying cervical cord. At C4-5, there was marked narrowing of the intervertebral disc and prominent bridging spondylosis. It was noted that this formed a ventral bar at that level, which compressed the cervical cord in the exiting left C-5 root sleeve. Treatment records dated in March 2007 showed mild disc bulging at C3-4, cervical spondylosis with minimal cord compression at C4-5, cervical spondylosis with osteophyte producing mass effect on the thecal sac at C5-6, along with osteophytes producing bilateral foraminal narrowing at C5-6 and mild cervical spondylosis at C6-7. A January 2010 MRI showed multilevel degenerative disc disease and slight reversal of the normal cervical lordosis. At that time, the Veteran reported a history of chronic neck pain having onset 30 years earlier following trauma to that head. Subsequent treatment records document treatment for a cervical spine disability along with a reported history of an injury in service. 

Accordingly, there is evidence of a current disability of the cervical spine and there is satisfactory lay evidence that the Veteran sustained an injury in service that likely involved some impact to his upper back. However, there is no competent evidence showing a chronic cervical spine disability in service or arthritis within one year following discharge from service; thus, competent evidence of a nexus between the current disability and service is necessary to substantiate the claims for service connection. 

On the question of a nexus between the cervical spine disability and the in-service injury in 1957, there is evidence both for and against the claim.

The evidence in favor of the claim consists of the medical opinion of Dr. E.L.W., the Veteran's treating physician since 2003, who in an October 2015 statement, following a review of the Veteran's civilian and VA medical records, noted the Veteran suffered a severe assault while on active duty in the U.S. Army in 1957. Reportedly, the assault resulted in severe bodily injuries. Dr. E.L.W. indicated that the Veteran complained of chronic severe neck pain for over 30 years and his MRIs were consistent with moderately-severe degenerative disc disease of the cervical spine. Dr. E.L.W. opined that there was a greater than fifty percent chance that the 1957 assault contributed to the Veteran's current spinal complaints.

The evidence against the claim consists of the March 2016 VA examination report. The examiner noted that the Veteran had a diagnosis of degenerative joint and disc disease of the cervical spine, along with a history of an injury incurred during a physical altercation while on active duty. Reportedly, at the time the Veteran was examined and released, with no further treatment. The examiner noted a medical history significant for tobacco abuse for 15 years and an occasional alcoholic beverage, as well as prostate cancer treated with radiation and prostatectomy. The Veteran also related having undergone two hernia repairs due to lifting.

Following an examination of the Veteran and a review of the claims file, the examiner opined that the cervical spine disability was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner noted that the medical records documented post-military head injuries, to include in the 1960's. Additionally, post-service discharge the Veteran worked in a physically demanding job, as a painter, and consumed tobacco and alcohol, which pursuant to the medical literature caused degeneration of bones. Moreover, the medical literature noted that the leading cause of degenerative disc disease was aging, which was consistent with the Veteran's advanced age of 77. The examiner indicated that to the extent Dr. E.L.W. attributed the Veteran's current cervical spine disability to service, the opinion failed to acknowledge other possible causal factors associated with degeneration of the cervical spine, to include the Veteran's age, his medical history of prostate cancer with radiation treatment, his occupational history doing strenuous work that likely resulted in degeneration of bones due to overuse, and possible post-service injuries. Moreover, there was no evidence that the Veteran was seen for a chronic degenerative disc disease until many years after the in-service injury. 

The Board finds the opinion of the March 2016 VA examiner to be highly persuasive and probative in finding that the evidence does not support a conclusion that the Veteran incurred the current cervical spine disability during service. The examiner's findings were based on a review of the evidence and examination of the Veteran, which did not substantiate a finding that the Veteran sustained a chronic cervical spine disability in service. The examiner considered the complete record and the Veteran's contentions, and provided an explanation as to why the evidence does not support a finding that the Veteran current cervical disability is related to service. The Board finds this opinion is highly probative. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 -04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion). 

Conversely, the Board finds the October 2015 private opinion does not reflect consideration of the all of the facts, including failure to acknowledge the lack of medical treatment sought until decades after separation from service. See August 2015 Hearing Transcript (indicating the Veteran did not initially seek post-service treatment for any medical condition until the late 1970s). Moreover, this opinion lacks probative value as Dr. E.L.W.'s conclusion is not supported by any rationale. See Nieves-Rodriguez, supra; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

To the extent the Veteran believes that his current cervical spine disability is related to service, as a lay person, the Veteran has not shown that he has specialized training sufficient to render such an opinion. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In this regard, the diagnosis and/or etiology of the cervical spine degenerative joint and disc disease require medical testing and expertise to determine. Moreover, whether the symptoms the Veteran experienced in service or following service are in any way related to his current cervical spine disability is a matter that requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) ("Although the Veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with."). Thus, the Veteran's own opinion regarding the etiology of his cervical spine disability is not a competent medical opinion.

In summary, the most probative evidence indicates that the Veteran did not develop chronic cervical spine disability due to injuries incurred in service, and a chronic cervical spine disability was not shown for many years thereafter, and the weight of the competent medical evidence indicates that the condition is not related to service or any incident therein, to include the 1957 neck injury. Accordingly, the preponderance of the evidence is against the claim, and service connection is denied. 

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim for service connection for a residuals of a neck injury. As such, that doctrine is not applicable in the instant appeal, and the claim must be denied. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).

ORDER

Service connection for residuals of a neck injury, to include degenerative disc disease with cervical spondylosis, is denied.

____________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs